### HOUSTON OIL CO. OF TEXAS v. OLIVE STERNENBERG & CO. (No. 169–3178.)

(Commission of Appeals of Texas, Section B. June 9, 1920.)

1. Adverse possession ⚖️103—Possession of part of overlap held sufficient to give constructive possession of whole.

Where there was an overlap of 48 acres and a field of 50 or 60 acres, cultivated and occupied by the junior patentee, who resided on the junior patent, occupied about 15 acres of the overlap, the remainder being on the junior patent, such possession of part of the overlap being in good faith, was sufficient to give constructive title to all the overlap, notwithstanding the claim that such possession did not extend beyond actual possession, because merely incidental to possession of the residence of the junior patentee on the junior patent.

2. Adverse possession ⚖️106(4)—Possessor, though technically a trespasser at first, may secure title by limitation.

Owner under a grant which conflicted with and extended over on an earlier grant from the state was technically a trespasser, but when he opened a field thereon and continuously cultivated it and used it for the purpose for which it was adapted for the period prescribed by the statute of limitations, he lost the character of trespasser and became owner.

3. Appeal and error ⚖️1094(2)—Finding approved by Court of Civil Appeals conclusive on Supreme Court.

On a claim of title by adverse possession, where the facts necessary to constitute limitation were found by the trial court and approved by the Court of Civil Appeals, the Supreme Court was precluded from passing upon the question; it being purely one of fact.

4. Vendor and purchaser ⚖️239(6)—Limitation title prevails over paper title secured when land was vacant.

Where a person has in fact held land long enough to give him title by limitation, it is good against a claimant under a paper title, although at the time of the purchase the land is vacant and there is no trace of the prior adverse possession.

5. Adverse possession ⚖️103—Owner of subsequent conflicting state grant held to acquire title by limitation as against holders of prior grant not in actual possession.

Where there was a conflict between surveys of two grants by the state and holders of junior grant were in actual possession of the part of the land in conflict, cultivating and using it, claiming to the extent of the boundaries of their recorded deed, and there was not shown any actual possession or use of any part of the prior grant by the owners of that title and the possession by the owners of the subsequent grant was exclusive, open, adverse, and notorious, it matured into a legal title by the limitations statute.

6. Adverse possession ⚖️84—Good faith possession vests possessor with title.

Every owner of land is presumed to know its boundaries, take notice when they are invaded, and when such invasion arises by reason of field notes and muniment of title, issued to the adverse claimant's grantor and not from the intent of such claimant to acquire lands belonging to another by limitation, 10 years' possession and use vests such claimant with complete legal title.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Olive Sternenberg & Co. against the Houston Oil Company of Texas. A judgment for plaintiff was affirmed by the Court of Civil Appeals (200 S. W. 232), and the defendant brings error. Judgment of Court of Civil Appeals affirmed.

H. O. Head, of Sherman, and Kennerly, Williams, Lee & Hill, and Fred L. Williams, all of Houston, for plaintiff in error.

Blount & Strong, of Nacogdoches, for defendant in error.

---

KITTRELL, J. On December 20, 1847, the state issued patent No. 406 to Lewis Bouillet to 320 acres of land located in Hardin county, being a body of land 1,344 varas square.

At an earlier date—but exactly when the record does not reveal—the state had issued a patent to F. P. Elliott to a league survey lying east of where the Bouillet 320-acre survey was located, and it was evidently intended that the east line of the Bouillet and the west line of the Elliott should be coincident, but the former as located, or at least as patented, lapped over on the Elliott about 600 varas. On December 14, 1859, Bouillet, for a recited consideration of $1,500, sold the 320 acres to M. Bracken, who at once moved on the same.

It appears that at that time no person knew of any conflict between the Bouillet and the Elliott. J. D. Bracken, son of W. G. Bracken, and grandson of M. Bracken, testified upon the trial that the first time he knew or heard of any Elliott line in conflict with the Bouillet was in 1905. It is shown —or at least suggested—by the testimony that a survey, made by one Doncetti within the comparatively recent past, first revealed the conflict. One Monk appears to have lived on the land before Bracken bought it, and there was testimony that the place appeared to have been cultivated for some years before Bracken moved on it. After a lapse of more than 50 years the memory of witnesses as to lines and locations, and the size of the fields and lots of cleared and used land and the exact location, is very indistinct, but it is evident that Bracken's house was on the Bouillet land proper, while somewhere between 5 and 15 acres was east of the true west line of the Elliott. Defendant in error by regular chain of title owns the Bouillet or Bracken land, while plaintiff in error holds the Elliott by regular chain of title. The map which was part of the statement of facts makes clear the relative location of the Bouillet and Elliott surveys, as it does also the description of the land claimed by plaintiff in the action.

M. Bracken died in March, 1872, leaving surviving him his widow, Mary L. Bracken, and one child, a son, W. G. Bracken, and on April 24, 1872, Mrs. Bracken made to her said son a deed to the south half of the Joseph Landis survey lying west of, and adjoining, the Bouillet, and also to that part of the Bouillet described as follows:

"All that part * * * which lies south of Beaumont creek and the branch thereof in front and south of the homestead place of the late Mathias Bracken, deceased, the quantity of land south of said branch and creek being as yet unascertained."

On the same day the son executed to his mother a deed to the north half of the Landis—to the south half of which she had executed to him a deed, as above stated—

and also conveyed by the same deed a part of the Bouillet described as follows:

"Beginning at the northwest corner of the Bouillet; thence south along the west line of the same and the east line of the Landis, to the branch south of the homestead place of Mathias Bracken, deceased; thence down said branch to Beaumont creek, and down Beaumont-creek to the east line of said Bouillet survey; thence north to the northeast corner of the said Bouillet survey; thence west to the beginning, the quantity of land not being exactly known."

Although upon the trial there was a surveyor on the stand, it was not shown how far it is from the junction of the branch and creek to the east line of the Bouillet, nor how far the creek is from the south line, nor what the area of land is between the branch and creek, nor what the area between the creek and the south line is, and even plaintiff in the court below (defendant in error here) does not allege the area, the description in the petition being substantially as follows:

"Beginning at the southwest corner of the Bouillet, at 703 varas cross the supposed west line of the Elliott league, at 1,344 varas corner, being the southeast corner of said Bouillet survey; thence north with the east line of said Bouillet survey to Beaumont creek and corner; thence up said creek to mouth of branch which runs south of the old Bracken homestead place, and corner; thence up said branch crossing Elliott west line to the west line of said Bouillet survey and corner; thence south with the west line of said Bouillet survey which is also the east line of said Landis survey, to the place of beginning."   •

The defendant, plaintiff in error here, disclaimed as to all the land sued for except that part which is in conflict with the Elliott and Hampton leagues. None of it appears to have been in conflict with the latter league. It pleads also that if any adverse possession was held by plaintiff as alleged, it was ineffective by reason of limitation and pleaded the 3, 5, and 10 year statute of limitation, but as to that defense concededly failed to make necessary proof. The record reveals no evidence of actual possession of any part of its Elliott by defendant below.

Defendant recalled J. D. Bracken, son of W. G. Bracken, and proved by him that in 1878 his father conveyed to him and his sister each a tract of land out of the east end of the Bouillet, beginning at the southeast corner, running north for the tract conveyed to the witness, and basing that conveyed to his sister on the north end of the tract conveyed to witness, and the witness testified that there were no improvements on either tract at that time. It was in evidence also that the fences had disappeared, but the old rows and furrows could be seen in the fields east and south of the house.

It may serve a useful purpose to say in this connection that the field notes in the deed just above referred to as having been made in 1878 by W. G. Bracken to his son, J. D. Bracken, were as follows:

"Beginning at the southeast corner of said Bouillet survey; thence west along the south boundaries of said survey 225 varas; thence north 600 varas; thence east 225 varas; thence south 600 varas to the beginning."

Within those limits are included practically 24 acres. It evidently includes a body of land 225 varas wide and 600 varas long, the southeast corner of which is the southeast corner of the Bouillet survey and its east boundary is the east boundary of the Bouillet. All the interests of the heirs of W. G. Bracken, grandchildren of Mathias Bracken, are owned by defendant in error, and when the action out of which this appeal arose was brought in January, 1914, the deed above recited to J. D. Bracken from his father had been executed nearly 36 years.

The field notes of the deed made on the same day by W. G. Bracken to his daughter, Mrs. Herrington, were evidently incorrectly copied into the statement of facts, in that one or more calls are missing. It was evidently intended to put that survey, so to speak, on the top of the survey deeded to J. D. Bracken, as in the statement of facts it appears that both the deeds were offered at the same time, and it was stated by counsel that they conveyed two tracts 225 by 600 varas, the east boundary of both being the east boundary of the Bouillet survey. Notwithstanding the incorrect copying of the field notes of the second deed, it is made evident that the two deeds contain a body of land 1,200 varas north and south by 225 varas east and west, or about 48 acres, all of which is in that part of the Bouillet survey which overlaps and conflicts with the Elliott.

From the deed made to W. G. Bracken by his mother and the deed made by her to him it is evident that it is the land she conveyed to him out of the Bouillet that is sued for, and it is through his heirs, the grandchildren of Mathias Bracken, that defendant in error claims title.

The case was tried without a jury, and the court found that M. Bracken went into possession of the Bouillet about January 1, 1860, and immediately commenced the cultivation of the field on said survey, consisting of 50 or 60 acres, and that within said field was about 15 acres of land on the conflict between the Bouillet and the Elliott surveys, and that said field was continuously held and possessed and cultivated from January, 1860, until some time in 1872, when Mathias Bracken died, and that his widow continued to cultivate, possess, and enjoy the 15 acres until 1884.

He found also that when Mrs. Bracken, now Mrs. Patterson, made the deed above re-cited to W. G. Bracken, her son, he immediately went into possession of the land conveyed. He also found that prior to the death of M. Bracken he had cleared a field south of the branch which is the present dividing line between the plaintiff and M. L. Patterson (formerly Bracken), and that said field had been continuously cultivated from said time during the war up to the death of M. Bracken, and that immediately after the death of M. Bracken, W. G. Bracken, his son, went into possession of said field south of the branch and east of the Elliott west line, and continued to use, cultivate, possess, and enjoy the land situated on said conflict until 1879. These findings are amply supported by the evidence.

The court's conclusion of law was that M. Bracken had matured title under the 3-year statute of limitation to all of the Bouillet survey, and that W. G. Bracken had matured title to the part south of the branch under the 10-year statute of limitation. The judgment of the district court was affirmed by the Court of Civil Appeals.

### Opinion.

Plaintiff in error bases its whole case on the following assignment of error:

"The court erred in not rendering judgment for the defendant as the owner of the record title to the senior survey, because, as shown by the undisputed evidence and findings of fact, the possession of the owners of the Bouillet survey of that part of same in conflict with the Elliott league consisted entirely of the possession, cultivation, and use of a field which lay partly on the Elliott and partly off of same, and was adjoining and was incidental to the residence, houses, and all other improvements which were situated entirely without the Elliott league, and such possession as was held on the Elliott league was merely subsidiary, and incidental to, and therefore referable to, the home and place of residence, and was therefor insufficiently distinct to afford a basis for the acquisition under the statute of limitations of more of the adjoining survey than was actually so possessed and used throughout the statutory period."

The authorities cited in support of the above contention are the following: Hill v. Harris, 26 Tex. Civ. App. 408, 64 S. W. 820; Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Bailey v. Kirby (Civ. App.) 195 S. W. 221.

The holding in the first case cited was, under the facts manifestly correct, and the Supreme Court by refusing writ of error so judged, but it is not controlling, and is indeed but to a small, if to any, extent applicable to the case in hand.

In Holland v. Nance the appellee got his fence by accident of error a few feet over on the adjoining survey, and when he discovered that fact, he got a deed (from some party who had no title) to a large part of the adjoining survey, and recorded that deed

and paid taxes according to its boundaries for 5 years, but never moved his fence or gave any other notice of his intention to claim title to any part of the adjoining survey. The writer of this opinion was judge of the district court in which the case was tried, and he held that Nance did not acquire title by his deed and payment of taxes, which conclusion, though disapproved by the Court of Civil Appeals, was later upheld by the Supreme Court.

In Bailey v. Kirby, Bailey (to use the language of counsel for appellee, which is quoted by the Court of Civil Appeals) "purposely straddled the line between the Irion (for part of which survey he sued) and the Thompson, subjecting an insignificant portion of the Irion to a purely incidental use under such circumstances as to avoid the appearance of an adverse claim upon his part to the entire Irion survey." The court correctly held that Bailey could not by such method and in such way perfect title to 160 acres of the Irion by limitation.

The case of Fielder v. Houston Oil Co. (plaintiff in error in this action), 208 S. W. 158, is not cited by counsel, but it is a case most apposite to the instant case. In a very clear and able opinion by Justice Montgomery he held in that case that the actual possession of a few acres of a tract of land by inclosure with other land owned by the claimant is insufficient to put the owner (of the other land) upon notice that any claim of adverse possession is asserted beyond that actually fenced. Such holding is in strict accordance with that in Bracken v. Jones, 63 Tex. 184, a case which has been consistently adhered to, because it is in harmony both with sound law and sound morals.

[1] To our minds there is an obvious distinction between all the cases cited and the instant case. The Brackens never consciously put any improvements on any land which they did not believe belonged to them, because it was included, as they believed, in the boundaries by which they bought from the original grantee of the land. It was described by metes and bounds in the patent, and by said metes and bounds was conveyed by onerous title to Mathias Bracken, who did not know that it in any extent conflicted with the Elliott.

He evidently was not seeking, as was the claimant in most, if not all of the cases cited above, by devious and insidious methods to acquire by limitation land that he knew was not included in the boundaries of that which he had bought.

It is true his land overlapped on the Elliott, and that while his house was on the Bouillet west of the conflict, 15 acres of his field was east of the conflict, yet he knew of no conflict but supposed his field was in fact on the Bouillet survey (which was the case), and, so believing, cleared it, cultivated it, and exercised dominion over it. His possession was open and notorious, and was hostile, because the patent under which he claimed and his deed were of record, and he built and improved within the boundaries by which he had bought.

[2] He was of course as to the land lying beyond the line which conflicted with the Elliott, technically a trespasser; but when he opened a field thereon and continuously cultivated it and used it for such purposes as it was adapted to, for the period prescribed by the statute, he lost the character of a trespasser and became the owner. Charle v. Saffold, 13 Tex. 111; Craig v. Cartwright, 65 Tex. 422.

[3] While the testimony of J. D. Bracken concerning the conveyances made to him and his sister in 1878 and the field notes of the deeds as revealed in the record was persuasive testimony against the claim of improvements and use, as alleged by plaintiffs, yet it is not conclusive, and the facts necessary to constitute limitation having been found by the trial court, and that finding having been approved by the Court of Civil Appeals, we are precluded from passing on the question, as it is purely one of fact.

[4] Furthermore, such a situation is controlled by the holding that where a' person has in fact held land long enough to give him title by limitation, it is good against a claimant under a paper title, although at the time of the purchase the land is vacant and there is no trace of the prior adverse possession. McGregor v. Thompson, 7 Tex. Civ. App. 32, 26 S. W. 649.

[5] Regardless of the question of conflict between the two surveys, the Brackens, under and through whom defendant in error claims, were in actual possession of parts of the land in conflict, cultivating, using it, and claiming to the extent of the boundaries of their recorded deed, and there not being shown any actual possession or use of any part of the Elliott by the owners of that title, the Bracken possession was exclusive, and was open, adverse, and notorious, and by lapse of time matured into a legal title.

We are of opinion that the case in hand is not within the rule as laid down in the cases cited, and in other cases decided by this court.

If the east line of the Bouillet and the west line of the Elliott had been in fact coincident and there had been in consequence no conflict, and Bracken had then built his house on the Bouillet, but had extended his field a few acres over on the Elliott, a different case would be presented; but so far as he was concerned he manifestly had no intention of putting his improvements anywhere except within the boundaries by which he had bought, and he was only claiming title to land which he was justified by the state's patent in believing belonged to him.

[6] Every owner of land is presumed to know its boundaries and to take notice when they are invaded, and when that invasion arises not from the purpose of the adverse party to prostitute the law of limitation to the unworthy end of securing title to his neighbor's land, but arises by reason of depending on the field notes in the muniment of title issued to his grantor, 10-year possession, and use, vests the party so possessing and using with complete legal title. Authorities supra.

We are of opinion that defendant in error has under the law when applied to the facts the complete legal title, and the Court of Civil Appeals rightly so adjudged, and we therefore recommend that its judgment be affirmed.

PHILLIPS, C. J. We approve the judgment recommended in this case.