**McCABE et al. v. MOORE.**

No. 7578.

Court of Civil Appeals of Texas. Austin.

April 15, 1931.

Rehearing Denied May 6, 1931.

G. S. Arnold, of Robert Lee, for appellants.

J. A. Thomas, Lloyd Kerr, and Louis D. Gayer, all of San Angelo, for appellee.

BLAIR, J.

Appellee, G. J. Moore, sued appellants, J. Q. and Frank McCabe, in trespass to try title to 23 acres of land out of survey 18, block W, Texas & Pacific Railway Company land, containing 147.4 acres, and at the conclusion of the testimony obtained an instructed verdict and judgment for the 23 acres against appellants' claim of title thereto by the 10-year statute of limitation; hence this appeal.

The evidence established appellants' claim of limitation title as a matter of law. The entire survey 18 was patented to appellee, Moore. May 26, 1902, he sold the east 48 acres to W. C. Locke, and he and Locke agreed upon a boundary line between the 48 acres and the 100 acres remaining without a survey, and shortly after the sale constructed a fence on this agreed boundary line, with the agreement that, if either party thereafter surveyed their land and found the fence not to be on the true boundary so as to divide the land, 48 acres to Locke and 100 acres to appellee, either party could remove the fence to the true boundary. October 1, 1913, W. C. Locke and wife sold the land to appellant Frank McCabe, the son of appellant J. Q. McCabe, who in fact bought the land for his son. December 28, 1928, Frank McCabe sold the 48 acres to appellant J. Q. McCabe. Neither of the appellants ever knew of the agreement between Locke and appellee Moore to remove the fence to the true boundary if the land was ever surveyed by either of them until the filing of this suit in 1929, and about 14 years after appellants purchased the 48 acres from Locke. The 23 acres in controversy was inclosed by the fence with the 48 acres, and lies between the fence and immediately west of the 48 acres. Frank McCabe testified with respect to his claim to the 23 acres:

"My father made the deal for the land when Mr. Locke and his wife deeded it to me. He practically made the purchase and had the deed made in my name,—he let me have the school land out of the deal. Like my father, I did not know there were more than 48 acres east of the road until the survey was made. We considered we owned everything under the fence. Until the survey was made I didn't know there was an excess."

Appellant J. Q. McCabe testified as follows:

"It had been in my possession or in my pasture and Frank and I were using it jointly, that is he was using my other land in the pasture and I was in possession of it when I got that deed. My title came through Frank McCabe. I have claimed all that land lying east of the fence through my purchase from Frank McCabe, since the date of that deed. * * * I used this land for grazing purposes. * * * I rebuilt the fence since I got it and put a net wire fence next to the road, * * * and have had continuous possession of it ever since. I have claimed all that part of that survey as my own from the time I purchased it. * * * I took possession of all the land east of the fence under that deed from Frank McCabe. It is also true that Frank took possession of the same thing from Mr. Locke, and it is by reason of that purchase from Locke, and only by that purchase from Locke, and only by that purchase that Frank and I made any claim to any of the land east of the fence. * * * I thought I was buying to the fence when I was buying it. Moore was there all the time. I thought the fence was located correctly. I thought the 48 acres went to the fence line. If there was more land in there I didn't claim it by reason of mistake—I didn't have any claim on it except limitation. If limitation gave me any right I had it, and if not I didn't. The deed recited that I paid the money. * * * The land I bought from Mr. Locke as well as the land bought by Frank, was enclosed with a three-wire fence, I believe it was sufficient to turn stock. * * * Mr. Moore never told me that he owned any land over there. * * * Up to the time of the survey there had never been any dispute between us about that line * * *. Of my own knowledge no one except myself and Frank McCabe claimed any land in that enclosure. * * *

"With reference to whether I ever claimed the land east of the lane other than the 48 acres I bought and paid for, I claimed all the land by that deed and any rights under the limitation law, if I have held it long enough. I didn't know any excess was there, but I claimed it because I thought it was my 48 acres."

A plea of title by the 10-year statute of limitation is supported by possession for the required period and claim of ownership under a deed, although the deed does not include the disputed tract. Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Henderson v. Nelson (Tex. Civ. App.) 284 S. W. 318; Daughtrey v. New York & Texas Land Co. (Tex. Civ. App.) 61 S. W. 947; Houston Oil Co. v. Olive Sternenberg & Co. (Tex. Com. App.) 222 S. W. 534; 2 Tex. Jur. 125, § 65. So, under this rule, the fact that appellants held adverse possession of the 23 acres under the belief that it was included in their deed to the east 48 acres of survey 18, and that they had perfect title to it, when in fact it was not so embraced, "does not deprive it of any element necessary to support the plea of limitations." Jayne v. Hanna (Tex. Civ. App.) 51 S. W. 296. And, since it appears that appellants took posses-

sion of all land inclosed by the fence, which had then been constructed for more than 11 years, and asserted ownership of the disputed tract within that inclosure for an additional period of more than 14 years, their claim of title by limitation is sustained, although they may have testified on the trial to the effect that they never knew any land was in their inclosure except the 48 acres described in their deeds. Sanders v. Moore (Tex. Civ. App.) 157 S. W. 441, 442 (writ ref.).

Appellee contends that appellants' possession of the 23 acres was permissive only under the evidence. The proposition is predicated upon the agreement between appellee and Locke that, if the fence was found on a survey by either party not to be on the true boundary of the 48 acres, same could be moved to the true boundary when established; which agreement appellee contends was binding upon the parties and their privies.

It is true that a mere permissive possession, however long continued, will not give title by adverse possession, but that rule has no application here for at least two reasons, as follows:

■■ (1) An oral boundary agreement is not binding upon subsequent purchasers without notice of it. Houston v. Sneed, 15 Tex. 308; Harris v. Kiber (Tex. Civ. App.) 178 S. W. 673; Louisiana & T. Lumber Co. v. Dupuy (Tex. Civ. App.) 113 S. W. 973; Merrell v. Kenney (Tex. Civ. App.) 45 S. W. 423; 7 Texas Jur. 196–198, §§ 55 and 56, and cases there cited. The evidence is undisputed that appellants knew nothing of the alleged oral boundary agreement between appellee and Locke to remove the fence from the then agreed boundary to one to be established in the future at the option of the party making a survey to establish same, until the filing of this suit, which was more than 14 years after they had purchased and taken possession of the supposed 48 acres as inclosed by the fence. Since appellants had no notice of the alleged agreement, they are not privy to it, and their possession was not permissive, but adverse under the claim of ownership of all land inclosed by the fence. Jones v. Andrews, 62 Tex. 668. Appellee cites the case of Esser v. Kneupper (Tex. Civ. App.) 205 S. W. 508, in support of his permissive possession claim. That case merely holds that where, in fencing land, one party procures permission from adjoining owners to make offset in fence from the known boundary, in order to avoid crossing a deep gully or ravine, under agreement to later adjust or buy the parcel so inclosed by the one fencing, the possession of such

parcel, absent further agreement or notice that fencer was claiming it, was not adverse so as to support limitation. These facts furnish no analogy here, where the boundary was not known to the parties, and where they constructed a fence on the then agreed boundary, with the further agreement that the fence might at the option of either party be moved to the true boundary if same should ever be established by a survey.

■ (2) The alleged oral agreement to remove the fence to the true west boundary of the 48 acres when same might be established by a survey made at the option of either party in the future is in violation of the statute of frauds (Rev. St. 1925, art. 3995, par. 4), and therefore unenforceable. The rule is thus stated in 7 Texas Jur. 199, § 57: "It is essential to the validity of a parol agreement as to boundaries that the line be in dispute, or that its true location be unknown to the parties. * * * In addition * * * it is requisite that the agreement be definite and unconditional." Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340; Decker v. Rucker (Tex. Civ. App.) 202 S. W. 1001.

The alleged agreement to establish the true west boundary of the 48 acres by a survey was indefinite as to when the survey should be made. It was also conditional, in that it was optional whether either party should ever make the survey. In fact, to enforce this agreement and remove the fence from the first agreed boundary, where it has been located for more than 25 years, would in effect leave the matter where it was originally, that is, as if no agreement as to boundary had ever been made, because the law would fix the west boundary of the 48 acres as the true one under the terms of the deed. And, while the evidence detailed may not estop appellee from contending that the original location of the fence was subject to the agreement to remove on survey and fixing true boundary, it furnishes a strong circumstance that the fence was located on the agreed boundary under the rule that one is presumed to know the boundaries of his own land; and appellee having permitted the fence to remain on the admitted agreed location for more than 25 years is also a strong presumption that he agreed that the line on which the fence was constructed was the true one. Bohny v. Petty, 81 Tex. 524, 17 S. W. 80; Lagow v. Glover, 77 Tex. 448, 14 S. W. 141.

We reverse the judgment of the trial court, and here render judgment for appellants for title and possession of the 23 acres of land in controversy.

Reversed and rendered.