## GLECKLER v. DENTON et al.

### No. 8976.

Court of Civil Appeals of Texas. Austin.

Feb. 19, 1941.

Rehearing Denied March 19, 1941.

Victor Gleckler, of Austin, for appellant.

Patterson & Patterson and Hart & Brown, all of Austin, for appellees.

BAUGH, Justice.

This suit presents a controversy between the owners of Lots 20 and 20½ in Enfield "A" in the City of Austin. The appellees acquired title to Lot 20½ in June, 1923, and appellant acquired title to Lot 20 in May, 1929. The two lots adjoined and had a common boundary. The sole question presented is whether appellees, who owned and resided upon Lot 20½, acquired title by limitation to a strip of land about two feet wide claimed by appellant to be a part of Lot 20 adjoining Lot 20½. The trial was to the court without a jury, judgment rendered for appellees, who were defendants below, from which Gleckler has appealed. At appellant's request, the trial court filed findings of fact, wherein he found that appellees had had "adverse and peaceable possession, use and enjoyment of the strip of land in controversy * * *, using same for the maintenance of a driveway and sewerage line, flower beds and the growing of shrubbery and other shade trees" from the time they purchased Lot 20½ in June, 1923, up to the time this suit was filed in 1936.

■ While appellant urges several propositions, in the last analysis, the controlling question presented is whether there was sufficient evidence before the court to sustain a limitation title to the strip in appellees. The elements essential to title by limitation are not only set out in the statutes, but have become so well settled in adjudicated cases that any extended discussion of them would·be superfluous. See R.C.S. Arts. 5510, 5513, 5514, 5515; 2 Tex. Jur., §§ 3 and 4, pp. 11–14. The possession necessary to acquire such title must be open, adverse, peaceable, continuous for the required period of time, visible, hostile and exclusive.

■■ In the instant case the recorded map or plat of these lots showed Lot 20 to front 100 feet, and Lot 20½ to front 150 feet, on Windsor Road. The Dentons who purchased Lot 20½ in 1923 thought that lot fronted 160 feet on Windsor Road. Regardless of that, however, the evidence was amply sufficient to show that in 1916, the owner of Lot 20½ erected a rock wall on what he then took to be the dividing line between these two lots. This wall enclosed as a part of Lot 20½ the two-foot strip here involved, was there when the Dentons acquired the property in 1923, and was then pointed out to them as being the dividing line between the two lots. This wall was later removed and a hedge planted along the same line. The hedge was subsequently removed and a fence built in its place. Clearly this was sufficient to constitute an enclosure of the strip as a part of Lot 20½. Mrs. Denton (her husband having died prior to the trial) testified unequivocally to the use of the strip involved; that they had continuously used and claimed it as a part of their property and that they thought it was a·part of Lot 20½. Consequently, the.trial court's findings of fact are sustainable under the evidence.

■ It makes no difference that the strip was not in fact included within the field notes of Lot 20½, nor that the Dentons thought that it was. If the essential elements of a limitation title were shown, the fact that they were mistaken about the exact area included in their grant did not prevent the running of the statute in their favor. 2 Tex.Jur.· § 65, p. 124. Their intention to claim, and their claim of ownership of, the strip involved was clearly shown.

■ Nor do we think that the execution by the respective owners of these two lots in 1931 of paving liens calling for a frontage of 100 feet and 150 feet, respectively, necessarily negatives a hostile claim by the Dentons of the strip in question. Obviously these liens were drawn with reference to the official map of these lots appearing of record, and not from actual measurements on the ground. This is manifest from the fact that the combined frontage of these two lots in fact exceeded 250 feet; and there is nothing to indicate that the paving contractor or the property owners took into consideration either the strip in question or the actual location of the dividing line in question. From these facts and circumstances the trial court was authorized to conclude, as he evidently did, that the execution of these liens with the frontage stated therein, did not negative any hostile or adverse claim by the Dentons of the strip here involved, and did not interrupt the continuity of their claim and user of the property in question.

■ While appellant complains generally of the failure of the trial court to make, as findings of fact, several purported findings of fact requested by him, the assignment and proposition stated thereunder are so vague, indefinite and general as.

not to require consideration. An examination of these requested findings, however, discloses that they relate, not to ultimate facts determinative of a limitation title to the land involved, but merely to evidentiary facts and circumstances, e. g. as the length of the rock wall erected in 1916, when it was torn down, etc., all of which were but evidentiary of the extent and continuity of the adverse possession. It is settled that the court should, where findings are requested, make only findings of ultimate facts, not of evidentiary matters which support them. 41 Tex.Jur., § 386, p. 1259.

In the last analysis, the gist of appellant's contentions is that the trial court erroneously found the facts necessary to sustain title by limitation in appellees against him. Many of the facts were undisputed. On those that were, the evidence was conflicting. In such case, the trial court having resolved the conflict against appellant, under now settled rules, the appellate court has no authority to disturb such findings.

Finding no error, the judgment of the trial court is affirmed.