## MILLER v. ROBERSON.

### No. 2284.

Court of Civil Appeals of Texas. Eastland.

Sept. 25, 1942.

Rehearing Denied Oct. 23, 1942.

Williamson & Nordyke, of Stephenville, for appellant.

Joseph A. Chandler, of Stephenville, for appellee.

LESLIE, Chief Justice.

C. W. Roberson instituted this suit in trespass to try title against R. M. Miller to recover a small portion of a city lot in the town of Stephenville. The defendant answered by plea of not guilty and by plea of ten years' limitation, and also by cross-action asserted title to a larger tract of land which included the smaller tract claimed by the plaintiff. The trial was before the court without a jury, and judgment was rendered in favor of the plaintiff for the small portion of the lot sued for and denying all relief to defendant. Miller appeals, attacking the judgment by three assignments of error.

The facts out of which litigation grows are in substance as follows: The litigants agree that W. P. Pitman and W. J. Gray constitute common source of title; that they sold lot 3, block 9 in Stephenville, Texas, to the Clay Lumber Company December 31, 1930; that the Lumber Company conveyed same to Stephenville State Bank April 4, 1932, and that the Bank conveyed same to plaintiff, C. W. Roberson, January 17, 1940.

The land involved in this controversy is out of the southeast corner of lot 3, as shown by plaintiff's pleadings, as well as

by defendant's pleadings. The following plat reflects that fact as well as the respective claims asserted by the litigants.

The tract for which plaintiff sues will be referred to as Tract "A", and the tract sued for by defendant in Cross-Action as

Tract "B". Tract "B" is 36.1 feet north and south by 58 feet east and west. Tract "A" is in shape and dimensions indicated by the plat.

June 24, 1930, W. P. Pitman and W. J. Gray conveyed to Elmer F. Grissom and Alice Grissom, his wife, lot 17, block 9, said addition to the City of Stephenville. This deed merely called for lot 17 with dimensions 58 feet east and west and 113.9 feet north and south. The description in the deed in no way called for or embraced a description of either Tract "A" or Tract "B".

The Grissoms appear to have gone into immediate possession of lot 17, and it is alleged that in connection therewith they took possession of Tract "B", erecting thereon a garage and shed on the part designated as "A". Reasonably soon after acquiring lot 17 the Grissoms built a residence thereon. This was erected by funds acquired by them through a loan extended to them November 1, 1930, by the United States Savings Bank of Detroit, Michigan. That Bank took a deed of trust on lot 17 (113.9 feet by 58 feet) to secure the loan. There was default in payment of the loan and the Savings Bank foreclosed its deed of trust on lot 17. The trustee in that instrument deeded the land described in the Deed of Trust to said Savings Bank on August 17, 1935, and on September 6, 1935, the Savings Bank by special warranty deed conveyed lot 17, as described in the trustee's deed, to Defendant R. M. Miller (all deeds and instruments in favor of either plaintiff or defendant herein were duly filed and recorded.)

Appellant Miller contends that when the Grissoms purchased lot 17 on June 24, 1930, they and their grantors (Pitman and Gray) understood and intended that Tract "B" (embracing Tract "A") was conveyed to the Grissoms, who then went into the possession thereof along with lot 17. That under the directions and with the consent of Pitman and Gray, who identified to them (the Grissoms) the corners and boundaries of lot 17 and especially Tract "B", the Grissoms were put into possession of the same. In other words, said Miller contends (1) that the claims, uses and occupancy of Tract "B" by the Grissoms, the Savings Bank and himself have been of such a nature as to perfect in him title by ten years' limitation, and (2) that transfers from each of them to the other and to him, respectively, established a privity of estate, enabling him to tack the adverse claims and possessions of each vendor to his vendee, thus completing the period of limitation and maturing in him such title.

By Point 1 the appellant insists that the undisputed evidence clearly establishes the alleged open, notorious and adverse possession of said land for more than ten years by him and those from and under whom he deraigned title to Tract "B".

The judgment of the trial court is contrary to this contention. We have carefully examined all the testimony in this case, and we believe it is sufficient to support the judgment. It certainly does not conclusively establish in the plaintiff and his predecessors in title any such alleged adverse possession sufficient to mature the title claimed by him. The least that can be said of the testimony on that issue is that same is conflicting, and the trial court has resolved the conflict in favor of the plaintiff. Under such circumstances this court is without authority to disturb the judgment.

The conflict in the nature of the evidence is readily seen by reference to the testimony of the witness Ben B. McCollum, who, as president of the Stephenville State Bank, testified that about November, 1936, and during the asserted limitation period, he had a conversation with defendant Roberson, and called his attention to the fact that his buildings (garage and shed) encroached upon the land in dispute. That Roberson told him "that he would move the building any time the witness wanted him to." McCollum further testified that Miller at that time signified his willingness to "vacate" the property. "That Miller agreed to vacate the property any time he (McCollum) wanted him to." That the substance of such conversation was afterward communicated by him (McCollum) to plaintiff, C. W. Roberson.

Plaintiff, Roberson, also testified that about January 27, 1940, he also had a conversation with said Miller in regard to the disputed land, and that said defendant answered in substance that he would like to keep his garage back there and he would either purchase it or do something about it, that he would vacate it if plaintiff requested.

The above and other testimony corroborative thereof supports the possible theory of the court's judgment, namely, that the element of adverse possession essential

to mature a ten year limitation title was not established. Clearly, the court could base on such testimony a finding of recognition by Miller of the Bank's title then being acquired by Roberson.

The rule of law applicable to such state of facts is stated in 2 Texas Jurisprudence Page 135, as follows: "A recognition of the title of the owner prevents or arrests the running of the period of limitation; and on the question as to whether the claimant's possession was adverse or hostile, evidence of his acts and declarations is admissible. As it is said, 'a single lisp or acknowledgment by the Defendant that he claims no title fastens a character upon his possession which makes it unavailable for ages'."

For other authorities see those cited by the text, and also Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24; Johnson v. Martinez, Tex.Civ.App., 18 S.W.2d 925; Texas & N. O. Ry. Co. v. Speights, 94 Tex. 350, 60 S.W. 659; Texarkana National Bank v. Ealy, Tex.Civ.App., 130 S.W.2d 433; Lindquist v. Sanford, Tex.Civ.App., 132 S.W.2d 279.

Since the testimony stated sufficiently supports the judgment the same is not subject to the attack made by this contention.

We also overrule the second contention to the effect that the undisputed evidence established a continuous privity (privity of estate) of possession of said lands existing between each and all of said claimants from the Grissoms to and including the defendant Miller for a period of more than ten years after the plaintiff's alleged cause of action arose and before the filing of his suit.

As above stated, the land in controversy (Tract "A") claimed by the plaintiff in his petition as well as Tract "B" claimed by the defendant in his cross-action is not described or embraced in the deed by Pitman and Gray to the Grissoms, the alleged first adverse holders. Neither was said Tract ("A") in controversy included in the deed of trust by the Grissoms to the Savings Bank. It was not included by any description in the trustee's deed to the Savings Bank, by which deed the Grissoms' title to lot 17 was foreclosed and vested in said Bank. In fact, the deed from the Savings Bank to the defendant Miller did not include any specific description of said tract claimed by the plaintiff. As to the conveyances mentioned in this paragraph,

the same omission is true of Tract "B" claimed by defendant.

On the other hand, the land in dispute was included in the deed from the common source to the Stephenville State Bank as part of lot 3 and also from that bank to plaintiff Roberson.

Under these circumstances, the title of the appellant Miller necessarily rests on bare limitation, and that under or upon the holding of several successive occupants. If such title matured in favor of the appellant the adverse possession of each prior holder, beginning with the Grissoms, through the United States Savings Bank and to defendant Miller, had to pass unbroken. In other words, there must have existed a "privity of estate" between such successive owners, as prescribed in Art. 5516, R.S. 1925.

In 46 A.L.R. 792, note, it is said "as a phase of the broad general rule that one in adverse possession of land cannot tack to his own the possession of a predecessor, to make up the period necessary to give title by prescription, unless he is in privity with that predecessor, it is uniformly held that a deed does not of itself create privity between the grantor and the grantee as to land not described in the deed, but occupied by the grantor in connection therewith, although the grantee enters into possession of the land not described, and uses it in connection with that conveyed."

"Privity of possession" is created by other facts and circumstances. As held in McAnally v. Texas Company, 124 Tex. 196, 76 S.W.2d 997, 1001: "Privity of possession between successive occupants or possessors of the land is shown to have existed, apparently, by proof that the earliest occupant's possession and claim passed or was transferred to the later occupant by agreement, gift, devise or inheritance. The fact of privity is not established where it simply appears that the land was occupied by different persons successively, there being nothing to show that the claim of the earlier was transferred to the later occupant by contract or otherwise."

It is in the above respect that the appellant's title also fails. When the Savings Bank foreclosed on Grissoms' property, he and his family had moved to Graham, Texas. He testifies that he had nothing to do with the foreclosure. That he did not surrender possession of the premises to the Savings Bank, to appellant Miller or any

other person. The wife testified in substance to the same facts, stating that the Lumber Company took the property and that Miller got what he had from the Company and not from them.

Obviously, the "privity of estate" between the successive owners of the land in controversy was not established. The transfer with continuity of adverse possession was lacking under the statute and numerous authorities. McAnally v. Texas Company, 124 Tex. 196, 76 S.W.2d 997; Abramson v. Sullivan, Tex.Civ.App., 103 S.W.2d 229; Moore v. Loggins, Tex.Civ. App., 114 S.W. 183.

The judgment sufficiently disposes of the issues raised by the pleadings. The assignments of error are overruled, and the judgment is affirmed.