## SURKEY v. QUA.
### No. 11254.

Court of Civil Appeals of Texas. San Antonio.

March 3, 1943.

Rehearing Granted April 7, 1943.

Rehearing Granted May 12, 1943.

Motion for Rehearing Overruled June 9, 1943.

Morriss & Morriss, of San Antonio, for appellant.

Elmer Ware Stahl and A. R. Sohn, both of San Antonio, for appellee.

NORVELL, Justice.

This is an action of trespass to try title involving a strip of land approximately 3 feet in width lying immediately south of and adjacent to the north boundary line of lot No. 7, in new city block No. 363 of the City of San Antonio. Lot No. 5 in said block lies immediately north of said lot No. 7. By stipulation in the trial court, it was agreed that Mrs. Miriam Qua, plaintiff below, was the owner of lot No. 7, "subject to whatever right the defendant (Mrs. Mosie Surkey, the owner of lot No. 5) may establish by limitation or otherwise, in and to the strip of land three feet wide, being the strip of land three feet south of the defendant's garage, as is now located on her property, and along a line parallel to the north boundary line of lot 7, it now appearing that the main issue between the parties being the ownership of said three foot strip of land, by limitation or otherwise."

At the conclusion of the evidence, the trial court took the case from the jury and rendered judgment for the plaintiff, as a matter of law. Mrs. Surkey has appealed, and here raises the principal contention that the evidence viewed in a light most favorable to appellant was sufficient to take the case to the jury. There is clearly no evidence upon which a finding favorable to appellant upon the suggested issues of agreed boundary or acquiescence (presumed grant) could be based and we therefore confine our discussion to the ten-year statute of limitation, Art. 5510, Vernon's Ann.Civ.Stats., which is the only limitation statute here involved.

According to Mrs. Surkey, she and her deceased husband, George Surkey, acquired lot No. 5 in the year 1901. The deed which they received described the lot as having a frontage of 21.15 varas on San Pedro Avenue. However, the actual San Pedro frontage in lot No. 5, conveyed by the deed, was approximately one vara (or about three feet) less. Mrs. Surkey testified that a fence was built around lot No. 5, which also enclosed a strip about a vara in width, which lay within the true boundaries of lot No. 7. Shortly after the acquisition of the lot, the Surkeys built a dwelling house and a barn thereon. The barn, which was later used as a garage, was situated upon the southeast corner of the lot, and the south side thereof, about eighteen feet in length, was located approximately on the true south boundary of the lot. The fence which encroached upon lot No. 7 was torn down and another fence constructed, connecting with the south side of the barn and extending in a westerly direction approximately along the true south boundary line, a distance of about seventy-one feet, or to a point eighty-nine feet west of the southeast corner of the lot. The total length of the south boundary of lot No. 5 is about 178 feet, and it appears that a concrete curb was also constructed which originally extended from a point near the end of the fence westerly to San Pedro Avenue. It seems that in 1928 a common concrete driveway leading into San Pedro Avenue was constructed for use of the occupants of the Surkey and Qua properties. Part of the curb, about seventeen lineal feet, was taken up in order to build this driveway. It appears that this curb was constructed approximately along the true boundary line, about three-tenths of a foot to the north thereof, according to a witness who measured it.

Mrs. Surkey also testified that a hedge was planted which extended from the west end of the fence, or a point near thereto, in a westerly direction to within a few feet of the western or San Pedro Avenue boundary of the lot. After the common driveway was built the hedge approached to a point some seventeen to eighteen feet from the western or San Pedro Avenue boundary line of the lot.

We here interpolate that Mrs. Surkey does not contend that the side of the barn, the fence, and the center line of the hedge delineate the tract of land claimed by her. Her claim is to a three-foot strip across the entire north end of lot No. 7, lying south of the fence and curb line hereinabove mentioned. She does contend that a part of the hedge encroaches upon the three-foot strip, but it is clear that the claimed three-foot strip includes lands lying south of the hedge. Mrs. Surkey testified that she placed her fence within her claimed property line so that there would be no question as to the ownership thereof; further, that she intended to place the center line of the hedge north of her claimed property line as "a hedge has to be trimmed on each side because a hedge projects over both ways, on each

side, and you don't want your hedge to grow out on any one else's ground. * * * I wanted to line things up along the south side and wanted them to look nice, and I lined up my fence with my hedge next to me—you have to take care of both sides of your hedge and you have to trim both sides of it, and you have to give it space there in order to trim it and take care of the hedge."

In 1907, George Surkey, the husband of appellant, as the holder of the legal title thereto, conveyed lot No. 7 to C. W. Buckner and wife, Laura C. Buckner, the predecessors in title of Mrs. Qua. Shortly thereafter a residence was erected on said lot No. 7. The west columns of the porte-cochere of this house are situated 2.3 feet and 2.6 feet from the true dividing line of lots 5 and 7, respectively, that is, .7 and .4 feet within the three-foot strip in dispute. The eves of the porte-cochere extend to about .8 of a foot of the true dividing line of the lots, or 2.2 feet within the disputed strip. This porte-cochere is about nineteen feet wide and opposite a portion of appellant's hedge. Upon the trial, appellant disclaimed as to that part of the three-foot strip actually occupied by the pillars of the porte-cochere. It appears that this house upon lot No. 7 has been continuously occupied by Mrs. Qua, or her predecessors in title, since it was built in 1907.

■ Appellant's testimony, relied upon to establish adverse possession, amounts to no more than that she continuously claimed the three-foot strip in question; that she made use of the strip to repair and maintain her fence and hedge, planted shrubs thereon, cared for the same, raked and kept the space clean and tidy; that appellee and her predecessors in title had never interfered with her use of the strip and apparently acquiesced therein.

■ Appellant's proof of possession is deficient in that it is of such a nature as will not permit the fixing of a boundary. Presumptions can not be indulged in favor of the limitation claimant. Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265.

Appellant claims a three-foot strip. It is undisputed that there is no fence or similar structure which delineates upon the ground the strip claimed. The evidence does show some use of the disputed area by Mrs. Surkey, but this use apparently is such as might give rise to an ease-

ment under certain conditions rather than a claim of title by adverse possession, unless such use is referable to something which in law will operate to delineate a definite area and fix the boundaries thereof.

■ Appellant is not claiming under "color of title." In Schleicher v. Gatlin, 85 Tex. 270, 275, 20 S.W. 120, 123, it is said: "A claim under 'color of title,' in its general sense, is such as to give constructive possession to the boundaries claimed, where there is no actual possession of all the land as under our 10-years statute. When a person enters upon land without any deed or color of title, he is a naked possessor, and his possession is restricted to the land actually occupied by him, but when he goes into possession under 'color of title,' as generally understood, it gives constructive possession to the boundaries defined in the instrument under which he holds."

■ Mrs. Surkey can not claim the strip of land here involved under "color of title" for two reasons: (1) The strip does not lie within the boundaries of the deed under which she holds; and (2) even if it did, George Surkey in 1907 conveyed lot No. 7 in its entirety to appellee's predecessors in title. Carley v. Parton, 75 Tex. 98, 12 S.W. 950; 2 Tex.Jur. 181, § 97. A mere mistaken idea as to the construction of a deed and a claim asserted thereunder is not "color of title" and therefore the use of the strip made by Mrs. Surkey can not be construed as giving her constructive possession of the entire strip. Davidson v. Equitable Securities Co., Tex.Civ.App., 96 S.W. 787; Perry v. Stevens, 44 Tex.Civ.App. 108, 97 S.W. 1075.

■ In fact, appellee and her predecessors in title have apparently had constructive possession of the strip in dispute since the dwelling house was constructed upon lot No. 7 in 1907. As appellee, or her predecessors in title, have occupied this house ever since that date it follows that appellee could "be ousted only by and to the extent of actual occupation by the adverse claimant," Mrs. Surkey. 2 Tex. Jur. 187, § 101; Evitts v. Roth, 61 Tex. 81.

We think it clear that such actual occupancy as would amount to an ouster of the constructive possessor must be something more than that disclosed by appellant's testimony. There must be some-

thing more than the mere occasional use of an area (undefined except by a "mental process" of the user) for the purpose of caring for hedges, shrubs, fences and the like. Article 5515, Vernon's Ann.Civ. Stats.; Scott v. Rodgers, Tex.Com.App, 6 S.W.2d 731. The three-foot strip here in question is not set off from the remaining part of the lot of which it is a part by a well-defined fence or enclosure. In fact, appellant is claiming outside her fence and curb which is shown to be located approximately upon the line between the two lots involved.

 We think further discussion is unnecessary. Complaint is made of the exclusion of certain testimony. It is sufficient to say that had the excluded testimony been admitted the legal situation would remain unchanged. The court would have nevertheless been duty bound to give a peremptory instruction for appellee or (as was done) discharge the jury and render judgment for appellee as a matter of law. Accordingly, the judgment of the trial court is affirmed.

On Appellee's Motion for Rehearing

 Upon further consideration of the record we are of the opinion that appellant's pleadings and evidence are insufficient to identify or locate upon the ground a tract of land (lying within the three foot strip claimed) of which she may have had actual possession. Consequently the trial court did not err in rendering judgment for appellee. York v. J. M. Thompson Lumber Co., Tex.Civ. App., 169 S.W. 187; Furlow v. Kirby Lumber Co., Tex.Civ.App., 53 S.W.2d 642; Musgrove v. Foster Lumber Co., Tex.Civ. App., 89 S.W.2d 287; Manning v. Standard Oil Co. of Kansas, Tex.Civ.App., 67 S.W. 2d 919; Bartee v. W. T. Carter & Bro., Tex.Civ.App., 100 S.W.2d 378; Marion County v. Sparks, Tex.Civ.App., 112 S.W. 2d 798; Hudson v. Norwood, Tex.Civ.App., 147 S.W.2d 826.

Our action granting in part appellant's motion for rehearing is set aside and the opinion relating thereto is withdrawn. Appellee's motion for rehearing is granted and the judgment of the trial court is affirmed.

We overrule in toto appellant's motion for rehearing filed herein on May 18, 1942, as well as appellant's motion filed on April 22, 1943.