## TARVER v. NAMAN.

### No. 3141.

Court of Civil Appeals of Texas.

Waco.

Jan. 21, 1954.

Rehearing Denied March 18, 1954.

Bryan, Maxwell, Bryan & Wilson, Waco, for appellant.

Naman, Howell & Boswell, Waco, for appellee.

McDONALD, Chief Justice.

This is a boundary suit in the form of trespass to try title filed by appellee against appellant, involving the line between lots owned respectively by appellee and appellant in Block 11 of the Ginocchio Addition to the City of Waco. Appellee is record title owner of Lots 13 and 14 and appellant is record title owner of Lot 12.

Appellant disclaimed any interest in Lots 13 and 14 except such portion thereof, if any, as might be included in property described as follows:

"Being located in Block 11 of the Ginocchio Addition to the City of Waco, McLennan County, Texas, and Beginning at a point in the North line of Cole Avenue S 60 W 91.5 ft. from the West line of North 25th Street, said point of beginning being on the West side of an 8 inch concrete curb N. 60 E. 8.5 ft. from the SE corner of said Lot 12 and the SW corner of said Lot 13. Thence S 60 W 50 ft. with the North line of Cole Avenue to a point for SW corner of this, said point being N 60 E 8.5 ft. from SW corner of said Lot 12 and S 60 W 0.1 ft. from West side of 6 inch concrete curb. Thence N 30 deg. 48' W 165.01 ft. part way with an old fence line to iron stake in South line of 20 ft. alley, said stake also being N 60 E 6.2 ft. from NW corner of said Lot 12. Thence N 60 E 50 ft. with the South line of said alley to point for NE corner of this, said point being N 60 E 6.2 ft. from the NE corner of said Lot 12 and NW corner of said Lot 13, also being S 60 W 11.8 ft. from West building line of Masonry Building. Thence S 30 deg. 48' E with an old fence line to place of beginning, a distance of 165.01 ft."

A review of the undisputed evidence in the case reflects that the entire Ginocchio Addition will not fit exactly into the tract out of which it was dedicated and for which reason it is impossible to say with certainty where the *true lines on any lot in the Addition* are located; that the appellant bought Lot 12, which the deed recited contained a width of 50 feet; that there is 50 feet only claimed by appellant.

The witness Clarence C. Jenkins purchased Lot 12 from A. H. Bell, Jr., in 1945, and sold the property to appellant in June 1950. He testified that when he purchased the property A. H. Bell's agent pointed out to him the boundaries of the property, and that it was pointed out to be all the land extending between the two fences.

The appellant testified that he took possession of the property pointed out between

The witness Browning, who owned Lot *13* (now the property of appellee) from 1923 until 1944, testified that in 1923 the Davis Lumber Co. built the fence that divides the Lots 12 and 13, and that he believed the fence to be the true line and that he never used or claimed any property beyond the fence or the fence line extended.

The evidence further reflects that A. H. Bell and A. H. Bell, Jr., owned Lot 12 (now the property of appellant) from February 1933 to July 1945. A. H. Bell, Jr., testified that the fence between the property of appellant and appellee was on the property when it was deeded to him, and that he claimed the property between the fences on the east and west sides during all the time that he was owner thereof, and that no one disputed his claim to the property during all of the time that he or his father owned same.

the fences and the fence lines extended; that he used all of the same in the normal manner of residence and occupancy; and that no one ever questioned his right to use and occupy the property between the two fences or the fence lines extended until this suit was filed in March 1953.

The witness L. F. Johnson testified that he lived on the adjoining lot to the west of appellant's lot since 1927, and that the fence between appellant's and appellee's property was at the same place as it had been since that time. He further testified that all during the time he lived there to the present time that those who occupied appellant's property and who owned appellant's property cultivated and used all of the property for residential purposes, such as the growing of grass and flowers, and that they took care of it. He further testified that no one ever questioned the pos-

session of appellant or the other owners of that property during all of the time that he knew the property.

The witness Gilbert Urbantke testified that he lived on appellant's property from 1937 to 1942; that he took possession of all the property between the fences and no one questioned his possession; and that he took possession of the front yard where there was no fence and maintained and kept the yard to the fence line extended out to the street.

The witness R. G. Golding testified that he occupied, used and took possession of appellant's property from 1943 to 1945; that he used all of the property between the fences and the fence line extended to the street, and that no one ever questioned his possession during all the time he lived on the property.

The witness F. L. Pittillo testified that he had lived in the same block as appellant's property since 1926; that the fences were up when he moved on his property and that in the 27 years he had known appellant's property no one ever questioned appellant's or appellant's predecessors in title in their use of the property. He testified that all the persons in possession mowed the lawn and kept the line up to the fences and to the fence line extended to the street.

The witness Uran testified that he had surveyed and made fieldnotes of the tract of land claimed by appellant in this case, and that these fieldnotes placed the line between appellant's and appellee's property along the fence line and the fence line extended to the street; and that the fence line extended from the fence to the street runs in a straight line. (These fieldnotes are quoted supra.)

All of the foregoing evidence is undisputed and uncontradicted.

Trial was to a jury. Both appellee and appellant moved for an instructed verdict. The Trial Court, in effect, overruled in part and sustained in part the motion of each party by instructing the jury to re-turn a verdict awarding appellant the land west of his fence, *but* awarding the 8 foot strip of land west of the fence line extended to the street, to the appellee. The Trial Court found that appellant had adverse possession of the strip under fence, but apparently reached the conclusion that it was necessary that appellant have all of the property that he was claiming under fence, in order to acquire title thereto by limitation. The strip of land in controversy on this appeal is approximately 8 feet wide and 50 feet long.

The issue therefore for determination by this court is, whether under the undisputed and uncontradicted evidence, the appellant cultivated, used and enjoyed the strip of land along the line of his fence, from the end of his fence to the street, in a manner and for a sufficient length of time to acquire title thereto under the 10 year statute of limitations, Vernon's Ann. Civ. St. art. 5510.

According to the official plat of the Ginocchio Addition each lot in Block 11 is 50 feet in width by 165 feet in length, the opposite sides of each lot being parallel to each other. It will be noted that the fieldnotes quoted above describe a parallelogram 50 feet in width and 165.01 feet in length. The course and distance of the south and north lines of the lot as thus described coincide with the course and distance of the south and north lines of Lot 12, Block 11 of the Ginocchio Addition as shown by the recorded plat of the Addition. Although the east and west lines of the lot described in the fieldnotes do not coincide with the east and west lines of Lot 12 as shown by the recorded plat of the Addition, the undisputed evidence shows that the six inch concrete curb and the old fence along the west line as referred to in the fieldnotes, as well as the old fence along the east line as referred to in the fieldnotes, have remained unchanged on the ground for 25 years.

It will also be noted that the property which the trial court in effect awarded to appellant is bounded, not by four straight lines, but by six straight lines, and that the west line of the strip 8 feet wide by 50 feet long is not parallel to the west line of the

fieldnotes which definitely fix the west boundary line of appellant's property. Not only so, but the west line of the strip 8 feet wide by 50 feet long which the Trial Court awarded to appellee runs below the eaves of the roof along the east side of appellant's residence which has been used and occupied by appellant and his predecessors in title for more than 25 years.

We think the fact that there was no fence between appellee's and appellant's property for the 50 feet nearest to the street is unimportant. This court will take judicial knowledge of the fact that in most modern cities front yard fences are exceptions rather than the rule. While an inclosure of land is decisive proof of possession, it is not the only evidence of the fact, and many cases hold that an inclosure is not essential to adverse possession. Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418; Liles v. Sawyer, Tex.Civ.App., 257 S.W.2d 512; Gleckler v. Denton, Tex.Civ.App., 149 S.W.2d 213; Major v. Meyers, Tex.Civ.App., 111 S.W.2d 1184.

Our Supreme Court has stated that a fence does not preclude the assertion of limitation title if the limitation claimants' possession and use of the land to defined and marked boundaries, whether fenced or not, were suifficiently peaceable, open, notorious, and adverse to give fair notice of the extent and hostility of their claim and obtained for a sufficient length of time. McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677.

Further, a plea of title by the 10 year statute of limitations is supported by *possession* for the required period, and claim of ownership under a deed, although the deed does not by its fieldnotes actually include the disputed tract. McCabe v. Moore, Tex.Civ.App., 38 S.W.2d 641; 2 Tex.Jur. 125.

In the case at bar appellant is claiming Lot 12 under a deed. The deed calls for 50 feet and he has 50 feet upon the ground. While from the evidence adduced in the case it is impossible to ever positively fix

the exact location of any of the lots in the Ginocchio Addition, the evidence conclusively shows that the appellant and those under whom he claims have claimed, used and occupied this particular 50 feet between the two fences *and between the fence lines extended to the street*, for a period in excess of 10 years, and that their possession was sufficient to give rise to title by limitations under the 10 year statute.

Further to the above, it is our view that the undisputed and uncontradicted evidence shows long recognition and acquiescence in the fence and the line from the fence to the street as the established boundary between appellant's and appellee's property for a period beyond the statute of limitations, and for which reason, under the law of this state, it becomes the true boundary line between the properties. Cox v. City & County of Dallas Levee Improvement Dist., Tex.Civ.App., 258 S.W.2d 851; Wheeler v. Ward, Tex.Civ.App., 245 S.W. 2d 987; Gulf Oil Corp. v. Amazon Petroleum Corp., Tex.Civ.App., 152 S.W.2d 902; 7 Tex.Jur. 202.

Applying the rules of law announced to the uncontradicted and undisputed evidence, we believe that appellant held continuous and adverse possession of the land between his fences, and the line of his fences extended to the street, cultivating, using and enjoying the same for more than 10 years prior to appellee filing this suit. We further believe that the fence line and the line from the fence extended to the street became the true line between appellant's and appellee's property by recognition and acquiescence in said line as the true line by all interested parties for a sufficient length of time.

Therefore, the judgment of the Trial Court is reversed and judgment is here rendered that appellant recover of and from the appellee the title and possession of the strip of land hereinabove described.

TIREY, Justice (dissenting).

I have examined very carefully all of the testimony tendered in this record and it is my view that appellant's proof of possession

of that part of Lot 13 that he seeks to hold by limitation, beginning with the end of the fence line and coming south to Cole Avenue, is deficient in that it is of such nature as will not permit the fixing of a boundary from the termination of the fence line to Cole Avenue under the applicable law of this state. No principle is better settled than the one that presumption cannot be indulged in favor of a limitation title, and further there is no description of that portion of Lot 13, where the fence line ends south to Cole Avenue, that would enable an officer charged with the duty of executing a writ of possession to go upon the ground without exercising a judicial function in order to ascertain the location of the line from the termination of the fence to Cole Avenue.

The evidence tendered is without dispute that there were seven lots, each 50 feet in width, in the south portion of Block 11 between the west line of 25th Street and the east line of 26th Street, fronting south on Cole Avenue. At one time there were seven houses in the block before the houses were removed from Lots 13 and 14 and where the filling station of the Texaco Company was later constructed. It appears that all of the property in the south half of Block 11 was conveyed by lot and block and not by metes and bounds, and since the evidence is without dispute that the south one-half of Block 11 lies between the west boundary line of 25th Street and the east boundary line of 26th Street, and that such distance is 350 feet, and that if each owner of the lots was on his property lines, according to the map and plat of this block, there is room for each of the seven lots with a 50 foot frontage, therefore any irregularity or errors with reference to the map and plat of Ginocchio Addition is of no significance here. There was at one time a driveway between Lot 12 and Lot 13, but it was just a graveled driveway and there was no curb there making it a definite boundary line between Lots 12 and 13.

Mr. Johnson, a Katy passenger conductor, testified to the effect that he had lived on Lot 11, which is west of Lot 12, since about 1912, and Mr. Johnson testified to the effect that his fence line sets over on his lot about two feet, and that appellant's front yard includes about two feet of his front yard. Mr. Johnson further testified to the effect that when the driveway that existed east of the east line of Lot 12 was abandoned that the driveway then became a part of the front lawn and that there was no separation line on the ground that showed the separation of Lot 12 from Lot 13.

Mr. Jenkins, who sold the property to appellant in June 1950, testified to the effect that he purchased Lot 12 in June 1945 from the agent of Mrs. Bell, and that he went with the agent, who pointed the property out to him between the two fences and showed him where the line was between him and a Mr. Haney, who lived at that time on Lot 13; that the agent pointed out that the property line on both the east and west was on the fence line and that the west line was also marked by a curb; that there was no curb between Lots 12 and 13, but at that time there was a driveway running in from Cole Avenue on Lot 13; that he maintained the yard up to the line of the fence on the east side of his lot and that he kept the front mowed up to a line with the fence as if it were extended to Cole Avenue; that when he sold the property to appellant that he took both Mr. Tarver and Mrs. Tarver with him to see the property and that they walked over it; that Mr. Tarver looked the property over in the back and saw where the fences were.

The appellant testified to the effect that when he bought the property in June 1950, that Lots 13 and 14 were vacant; that before buying it he went over and inspected it, went through the house and backyard, and Mr. Jenkins pointed out the boundary lines to him and Mrs. Tarver; that there was a concrete walk in a different color from the point where the other lot stopped and that Mr. Jenkins pointed out to him that his boundary line "was the fence line extended down, came right down to the end of this block of a different color"; that he seeded the front lawn in St. Augustine grass and kept it up; that after the Texaco station was built he claimed the line of the wall erected by the Texas Company was his east boundary line, and he mowed right up to

that. With reference to the east boundary line he said: "If this was the crack in the concrete wall blocks, that wall, that crack splits the center of that concrete wall that Texaco put. '* * * The wall is right on the fence line back here, down in front, then when it comes back it hits this fence, then there is a tree right on the boundary line, then when the fence gets to that, rather than come on the other side, it comes down here, and that made that wall a little bit to the right, then that wall when it gets down here to the filling station part, which would be, I presume, right along here (indicating) it is probably 15 inches from the fence boundary line. In other words the wall is on the boundary line here, and 15 inches off down here. That tree is between the stone wall and the fence boundary line." "Q. That tree you are talking about is right in the line? A. That is what Mr. Jenkins told me is the reason he went around that." The drive on the west side was still there. "Q. Could you still observe that it had been a driveway? A. Yes, sir, you could tell because of the walk paving, you know how a driveway you slant it down, and the end of that slant pavement came right up to the end of the sidewalk in front of my property and it went right along the fence line." That the houses on Lots 13 and 14 had been moved off for a period of several months; he did not know the exact dates; that during the time he was buying the property that he had a survey made, but that the survey was completed after they had signed the final papers and that he had already received his deed. It appears that this survey was made by Mr. Lemke and Mr. Tarver said with reference to the survey of Mr. Lemke: "Well, there was a question in my mind whether he was correct, being an engineering graduate myself, and the time he consumed in surveying it, and the statement he made at the time." That at the time he bought the property he thought that the fence line on the east line of Lot 12 was the correct line and that at that time the fence stopped about 60 feet north of Cole Avenue.

Mr. Uran, a civil engineer and surveyor, testified to the effect that he made a survey of the property in question in March 1953, which survey was made for the purpose of fixing the boundary line of Lot 12. It appears that at Mr. Tarver's suggestion he began at a point in the north line of Cole Avenue S. 60 W. 91.5 feet from the west line of N. 25th Street, such point of beginning being on the west side of an 8 inch concrete curb north 60 E. 8.5 feet from the southeast corner of Lot 12 and the southwest corner of Lot 13. He then went S. 60 W. 50 feet with the north line of Cole to a point for the S. W. corner, such point being N. 60 E. 8.5 feet from the southwest corner of Lot 12 and S. 60 W. 0.1 feet from the west side of a 6 inch curb. He then went N. 30°48' W. 165.01 feet part way with an old fence line to an iron stake in the south line of a 20 foot alley, this stake being N. 60 E. 6.2 feet from northwest corner of Lot 12. He then went N. 60 W. 50 feet with the south line of the alley to a point for the northeast corner, this point being N. 60 E. 6.2 feet from the northeast corner of Lot 12 and the northwest corner of Lot 13. He then went S. 30°48' east with an old fence line to the place of beginning, being 165.01 feet.

With reference to this survey Mr. Uran testified that in his opinion the east line of Lot 12, which is appellant's lot, is 100 feet from North 25th Street. Mr. Uran further testified:

"Q. And as a matter of fact, if you ran this line here from the alley right there, just parallel to 25th, from that point down to Cole, you think you would come into Cole about a foot west of the wall? A. It would come in a little more than that.

"Q. That is the reason I have been using the figure 2 or 3 feet, because I thought if you started here where this fence intersects the alley, at that point, and then run on, that is parallel to 25th Street, and run into Cole, you would come, I believe about 2 or 3 feet west of the concrete wall? A. Yes, sir.

"Q. Even disregarding this east line of Lot 12, as it is on the ground, which is really 8 feet west, or 5.6 feet west of the fence at the rear, for the purpose of

my question, if we would just disregard that and just take the so-called fence itself, if you wanted to get a straight line so as to straighten out that line between the alley and Cole, you would start 5.6 feet there in the back and then you would come on down to a point 2½ or 3 feet west of the wall? A. The line as I located it held on the ground as a straight line.

"Q. I meant parallel, of course, to 25th Street. A. I beg your pardon.

"Q. The checking is correct. I thought we would start at this point, where the fence begins and where the fence intersects the alley, and then a line parallel to 25th Street and intersect the north line of Cole about 2½ or 3 feet west of the wall? A. Yes, sir.

"Q. So that if, in fact, this property, Lot 12 and the owner of it, by limitation or otherwise acquired an ownership beyond his line here, the plat line, in order to get a line that would maintain a parallel character with 25th Street, and if you did begin at the point where that fence does intersect Cole, in order to retain a parallel line, you would come out 2½ or 3 feet west of the wall? A. Yes, sir."

My view is that the majority opinion fixes limitation title to a strip of land out of the south part of Lot 13 fronting on Cole Avenue 8.5 feet wide and extending north a distance of 50 feet, this being the measurements given this strip by Mr. Uran. I do not believe that appellant has carried his burden of showing that he has a limitation title to this strip of ground. As I view the record there never was any fixed boundary line under our decisions from the point where the fence terminated on Lot 13 south to Cole Avenue. It is true that the tenant on appellee's property did erect a wall on Lot 13, which wall appellant assumes is the boundary line to which he is claiming, but this wall was not erected until after appellant bought the property on June 6, 1950, and this suit was filed in 1953. My view of the testimony here is that this case falls

squarely within the rule applied by the San Antonio Court of Civil Appeals in Surkey v. Qua, 173 S.W.2d 230, writ ref.wom. In that case the court found that appellant's proof of possession was deficient in that it was of such a nature that it did not permit the fixing of a boundary for the part that she attempted to recover. I think that situation is applicable to the case at bar. It is well settled in Texas that presumption cannot be indulged in favor of a limitation claimant, and as I view this record there is nothing to tender the issue that appellant exercised exclusive adverse possession over the strip described in the majority opinion until after the lessee of the Levy property built the wall on the west side of Lot 13. Since that wall was built subsequent to the purchase of the property by appellant in 1950, it will not support his claim of limitation. Appellant had the burden of identifying that part of Lot 13 belonging to appellee on which he claimed exclusive adverse possession for a period of ten years, and since he failed to carry his burden in this behalf, it was the duty of the trial court to render judgment for that particular strip of land in favor of the record owner of the strip in accord with the rule announced by our Supreme Court in Coleman v. Waddell, 249 S.W.2d 912, points 2 and 3. The Supreme Court cites as authority Surkey v. Qua, supra, and York v. J. M. Thompson Lumber Co., Tex.Civ. App., 169 S.W. 187. As we understand the rule, it was appellant's duty to tender evidence sufficient to enable the court to determine with some degree of certainty what portion of Lot 13 he was entitled to recover by reason of his actual occupancy, and in the absence of such evidence the court was not authorized to render judgment in his favor for any portion of Lot 13, beginning with the termination of the fence on Lot 13, extending south to Cole Avenue

I have carefully examined Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418, no writ history; Liles v. Sawyer, Tex.Civ. App., 257 S.W.2d 512, no writ history; Gleckler v. Denton, Tex.Civ.App., 149 S.W. 2d 213, writ dis.cor.judg:; Major v. Meyers, Tex.Civ.App., 111 S.W.2d 1184, no writ history, and my view is that the factual situa-

tion here is distinguishable from the factual situation in each of the foregoing cases. I think the case of Riddle v. Vandiver, Tex. Civ.App., 225 S.W.2d 460, no writ history, is in accord with the rule cited in the Surkey case, supra and the facts in that case are very similar to the facts in the case at bar. See cases collated under Points 2 and 3.

In McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677, 678, cited in the majority opinion, we find this statement: "It is well settled that when a person enters into possession of land under a deed his possession is referable to the deed and is presumed to be in conformity with it, and hence, for a purchaser to acquire title by adverse possession to additional land outside the limits in his conveyance, he must have actual possession of the additional land of such a character as of itself will give notice of an exclusive adverse possession, and mature into title after the statutory period. * * * The rule is * * * that the constructive possession is always with the true owner, and this possession cannot be ousted by a limitation claimant without an actual entry."

Needless to say, in order for appellant to maintain limitation title to the strip in question he must resort and rely on the doctrine of "tacking" because he has not held the property long enough to get the property by limitation. See Miller v. Roberson, Tex. Civ.App., 165 S.W.2d 469, writ ref.wom., and authorities there cited. See also Alukonis v. Kashulines, 96 N.H. 107, 70 A.2d 202, 17 A.L.R.2d 1128. The judgment entered by the trial court permitted appellant to recover limitation title to that part of Lot 13, beginning at the alley and enclosed by the fence to the point of its termination on the ground. As previously stated, I think that an officer executing a writ could not go upon the ground and fix with certainty the boundary line from the termination of the fence to Cole Avenue under the testimony here presented. You cannot fix its boundary line except by assumption. See Colborn v. Culwell, Tex.Civ.App., 229 S.W.2d 202, no writ history; Hudson v. Norwood, Tex. Civ.App., 147 S.W.2d 826, correct judgm.

In Rick v. Grubbs, 147 Tex. 267, 214 S.W. 2d 925, point page 927, we find this statement of the rule: " 'The law presumes the true owner is in possession until adverse possession is proved to begin and when two persons are in mixed possession of the same land, one by title, and the other by wrong, the law considers the one who has title as in possession to the extent of his rights, so as to preclude the other from taking advantage of the statute of limitation. * * *' "

Accordingly, I think the judgment of the trial court should be affirmed.