**WOHLFELD et al. v. SHORT.**

No. 11803.

Court of Civil Appeals of Texas. Galveston.

Oct. 17, 1946.

Rehearing Denied Nov. 7, 1946.

Brian S. Odem, U. S. Atty., and W. F. Leigh, Asst. U. S. Atty., both of Houston, for appellants.

Randolph Pierson, of Galveston, for appellee.

GRAVES, Justice.

The appellee concedes this statement of the nature and result of this suit by appellants to be correct:

"Appellee, plaintiff below, brought this suit against appellants, defendants below, alleging that appellants were indebted to appellee in the sum of One Thousand Twenty-Eight and 03/100 Dollars ($1,028.-03), by reason of noncompliance with an agreement entered into by and between appellee and appellants. The case was tried before the court below without a jury, and judgment, pursuant to the Judge's Findings of Fact and Conclusions of Law, was entered in favor of appellee in the sum of Five Hundred Eighteen and 72/100 Dollars ($518.72), plus interest thereon at the rate of six per cent (6%) per annum from date of judgment, and for costs."

Findings of fact and conclusions of law were filed, pursuant to appellants' request therefor.

In protest here against such judgment below, appellants, in substance, present these four points of claimed error:

"First: The trial court's holding that appellee's acceptance of a voucher executed by appellants, bearing date July 1, 1943, in the sum of $2,764.15, defendants' Exhibit No. 5, together with the execution of plaintiff's Exhibit No. 3, prior to the acceptance of said check, did not constitute an accord and satisfaction binding on the parties, is erroneous, and wholly unsupported by the evidence.

"Second: The trial court's holding that plaintiff's Exhibit No. 1, and plaintiff's Exhibit No. 2, constitute the entire contract and agreement between appellants and appellee, and provide the sole measure of the parties' rights and liabilities, is erroneous, and wholly unsupported by the evidence.

"Third: The trial court's construction of plaintiff's Exhibit No. 1, and plaintiff's Exhibit No. 2, as an agreement entered into between the parties for the rental of four vehicles, *as a unit* at a minimum monthly rental of $700.00, is erroneous, and contrary to the evidence.

"Fourth: The trial court should not have allowed appellee to file a trial amendment and a supplemental petition, after both sides had rested, and, a denial of appellants' motion to strike said pleadings from the record, was error."

Since the first three points constitute attacks upon the sufficiency of the evidence to sustain each in turn of these successive points, an abstract of so much of the findings of fact by the trial court as most directly relate, respectively, to such points is here quoted, in substantially the same order, to-wit:

"It was not pleaded or proved that plaintiff (appellee) Short had any knowledge of the fact that the U. S. Government had a standard form of contract, known as 'Equipment Rental Agreement', which it required all contractors to use in making contracts for the rental of equipment from third persons. I find that plaintiff Short was not charged with knowledge of these facts as a matter of law, and that he did not know them as a matter of fact.

"On December 24, 1942, defendants were confronted with the problem of furnishing transportation for workers from near-by towns and cities to the job. On said date plaintiff Short was the owner of and in possession of four motor vehicles, to wit: two buses and two station wagons, which defendants regarded as useful to their purpose, and which they desired to rent.

"Accordingly Nathan Wohlfeld, acting for himself and the other defendants, requested plaintiff to call on Commander Madison Nichols, with the object of mak-

ing an agreement for defendants with plaintiff for the rental of said four motor vehicles.

"Pursuant to said request, plaintiff did call on Commander Nichols, and a verbal agreement was entered into by and between the Commander, acting for defendants, and plaintiff Short, for the rental by defendants of said four motor vehicles, which said agreement was evidenced by and confirmed by Commander Nichols in a writing denominated 'Memorandum for Mr. Wohlfeld', dated December 24, 1942, (plaintiff's Exhibit No. 2), and by a letter dated December 29, 1942, written by Nathan Wohlfeld to plaintiff B. F. Short, and signed by both Mr. Short and Mr. Wohlfeld (plaintiff's Exhibit No. 1).

"I find that the parties agreed and that the memorandum and letter aforesaid should be construed and is by the trial court construed, as follows:

"That defendants rented the four motor vehicles described in said memorandum and letter from plaintiff from month to month for an indeterminate period for a monthly rental of seven hundred dollars. * * *

"I find that the four vehicles were delivered by plaintiff to defendants, pursuant to the agreement aforesaid, on December 29, 1942, and were not tendered back to plaintiff until June 12, 1943. That therefore defendants are liable to plaintiff for six months rental at the rate of seven hundred dollars per month, or the sum of $4,200.00. * * *

"That the total extra mileage to which plaintiff is entitled under the agreement is $494.12.

"That the total consideration due plaintiff for monthly rental and extra mileage amounts to $4,694.12.

"That defendants have paid plaintiff the sum of $4,175.40 * * * leaving a balance due of $518.72. * * *

"Actual physical possession of all four vehicles was not obtained by plaintiff until June 26, 1943, as will be explained further in these findings.

"The letter dated December 29, 1942, signed by both Wohlfeld and Short (plaintiff's Exhibit No. 1) reads: 'Pending the writing of a formal Equipment Rental Agreement, this will serve the purpose of recording our understanding.'

"In the light of the balance of said letter and of Commander Nichols' memorandum to Mr. Wohlfeld (plaintiff's Exhibit No. 2), I construe said language to mean 'until a formal Equipment Rental Agreement is executed, this writing shall constitute the contract between us.'

"I further find that this was the intent and understanding of Mr. Wohlfeld and Mr. Short, and likewise Commander Nichols.

"I find that Mr. Short thought * * * he was renting his four vehicles to defendants as a unit for periods of thirty days each, at a rental of seven hundred dollars per month * * * That Mr. Wohlfeld and Commander Nichols knew, or in the exercise of ordinary care and business judgment should have known, that Mr. Short so understood and construed the agreement. * * *

"I find that no explanation was made to plaintiff by either Mr. Wohlfeld or Commander Nichols at the time the agreement was made for the rental of said vehicles that the Government had a standard form of contract, with certain mandatory provisions, which they required contractors on cost plus contracts to have executed whenever equipment was rented. I find that Mr. Short had no knowledge or understanding of what was meant by the term 'formal Equipment Rental Agreement', and that this fact was known to Mr. Wohlfeld and Commander Nichols, or by the exercise of ordinary business care and judgment should have been known to them, and that neither explained such phrase to plaintiff. * * *

"Under this contention and their construction of the original agreement, defendants, acting by and through Commander Nichols, admitted they owed plaintiff the sum of $4175.40 plus $110.00 for certain missing parts, less the advance payment of $1520.25, leaving a balance due plaintiff of $2764.15, which they tendered plaintiff in the form of their Voucher Check No. 3945 of date July 1, 1943. As aforesaid, plaintiff was contending for a larger bal-

ance, based on his construction of the contract.

"I find that Commander Nichols informed plaintiff Short on the occasion that he could not, under Government regulations, deliver said check or deliver physical possession of the four vehicles, to plaintiff, unless and until Plaintiff Executed Equipment Rental Agreement No. 35 (Plaintiff's Exhibit No. 3). Commander Nichols also informed plaintiff Short at said time that he could present his claim for the additional amount claimed by him, or go to court, as he saw fit. There was no contention made by Commander Nichols that the sum evidenced by said voucher was being tendered plaintiff in full settlement and accord of his claim.

"I find that in accepting said check plaintiff Short did not intend to accept the same in full accord and satisfaction of his claim, and that his acceptance of said amount and the cashing of said voucher did not in law constitute an accord and satisfaction. * * *

"Plaintiff's rights and defendants' liability are measured solely by the original agreement made between the parties, on the 23 or 24 of December, 1942. (Plaintiff's Exhibits Nos. 1 and 2). * * *

"I repeat that at the time of the original agreement as of December 23 or 24, 1942, plaintiff had no knowledge of the Government's custom with respect to the use of this standard form of contract, or with any of its provisions, and more particularly that provision set out in the second paragraph of Article XI, nor was same explained to plaintiff Short by either Mr. Wohlfeld or Commander Nichols at the time the original contract was made and the vehicles delivered into defendants' possession; also that no demand was made that plaintiff execute such formal standard equipment rental agreement until long after the contract had been completed between the parties."

The trial court having merged its findings of fact and conclusions of law, rather than stating them separately, that idea will be followed here also, in reviewing them.

At the outset, however, it may be stated that, after reviewing the evidence upon which they were founded, this court is unable to agree with appellants that upon the evidence as a whole any one of the so criticised three findings lacked sufficient support.

In the first place, the whole controversy —over the hiring of the fleet of automobiles by the appellants and the rental thereof by the appellee—was reduced by the parties to one as to the amount due by appellants to the appellee as the monthly rental thereon; that is, there was no dispute between them as to the extra mileage traveled by each of such vehicles and the amount due therefor, the bone of contention being as to whether the amount of the monthly rental due upon them all in a heap, considering them as a unit, was the $700 recited in the memoranda between the parties that were in evidence. Both these—that is, the appellee's so denominated Exhibits Nos. 1 and 2 —had been written by the appellants, No. 2 by Commander Nichols on December 24, 1942, No. 1 by appellant Wohlfeld on December 29, 1942, as evidentiary of the prior verbal agreement on the rental contract of December 23, 1942, between Commander Nichols and the appellee. Copies of these two "Exhibits" are appended to this opinion as parts thereof.

Another overall consideration may be stated to be, as this court understands the formula applied by the trial court in arriving at the amount of the judgment it awarded the appellee against the appellants, that is, $518.72, this:

The court held that the $700 per month was due upon all four cars as a unit for six months, totalling $4,200; that the excess in mileage charge for the four cars totalled $560.12, aggregating $4,612, from which the $4,175.40 admittedly paid appellee by appellants was deducted, leaving the judgment balance due of $518.72.

■ The cause appears to have been fully developed, and, notwithstanding some difficulties in procuring it, the testimony from both sides, including that—in person —of appellant Wohlfeld, Commander Nichols, and appellee Short, fully presenting its contentions was made available; wherefore, it is held that appellants' fourth point, complaining of the court's having granted

the appellee the right to file a trial amendment, as it did, should be overruled, upon the conclusion that such action did not violate the trial judge's discretion. See Rule 67, Texas Rules of Civil Procedure.

There appears no doubt that this single feature, having been thus tried before the court without a jury, and it further appearing that much latitude had been reciprocally allowed between the parties in the trial thereof, without objection, and when also, as indicated, the whole field of the controversy over the monthly rates had been covered there clearly appears to have been no excessive use of the court's power in allowing, at any time before it rendered its final judgment, the appellee to so change his pleadings (he had originally sued for $1,028.03, whereas he had, under the court's rulings during the trial, been able to prove only $518.72 thereof) by the supplemental petition as to cause them to conform to such evidence.

■ It would likewise seem that—if the trial court was justified, as it is held to have been, in holding that the parties in their original agreement, as actually made and thereafter acted upon between them, up until the expiration of six months thereafter, that is, until June 12 of 1943, when appellants tendered back the four cars to appellee, intended that the appellee should, in any event, get the monthly rental of $700 for all the cars—the evidence sustains the recovery allowed, appellants' three points to the contrary notwithstanding.

■ It is quite true that there was some conflict in the testimony affecting the details of what occurred between the parties, and that, had the trial court accepted appellants' version thereof, a different result would have followed; but, in the circumstances, not only must the court's specific findings be upheld upon the appeal, if there was evidence to support them, but further, if there was a dispute between any of the witnesses, and appellee's version was accepted by the trial court, the appellants' contrary one cannot prevail. Miller v. Roberson, Tex.Civ.App., 165 S.W.2d 469, at page 471; this was so with reference to the .appellee's testimony, which he repeated times over, that Commander Nichols told him at the inception of the transaction that he could get the $700 per month rental for the month of December, 1942, if he could get the equipment (that is, the four cars) over to him even a few days only before that month expired.

It would be supererogatory for this court to undertake a restatement, or even a complete resume, of all the extended evidence the trial court had before it in so adversely determining the facts challenged in appellants' first three points of claimed error; hence that will not be undertaken, but this court has carefully reviewed the statement of facts brought up with the record, and, as indicated, considering the testimony both pro and con, and not that from the appellants only, it is unable to find any lack of support for any one of the quoted findings the appellants so complain of.

■ Neither is it able to sustain appellants' view that the trial court's conclusions of law: (1) That appellee's acceptance of appellants' $2,674.15 voucher of July 1, 1943, did not constitute an accord and satisfaction of all that was due then to appellee for rental, (2) that appellee's Exhibits Nos. 1 and 2 constituted the entire contract of hire and rental between the parties and provided the sole measure of their respective rights, and (3) that, under the contract, appellants undertook to pay appellee for the four vehicles—as a unit —$700 per month for the time of their use and retention, were erroneous.

On the contrary, they are all upheld as properly applying the law to the facts so found.

As the trial court's findings fully reflect, the two written memoranda, denominated appellee's Exhibits 1 and 2, both show on their faces that this fleet of automobiles was consistently dealt with and referred to among the parties by the collective term of "the equipment"; indeed, that Commander Nichols himself, in preparing the memorandum No. 2, so designated it; that he so regarded them together as a unitary means of meeting the transportation problem to the Naval plant, itself being likewise habitually so referred to by him; in other words, the objective of the parties plainly appeared to be that the one should furnish

and the other should use this fleet of four cars as a means of relieving at the earliest moment possible the pressing problem of getting employees back and forth to the Naval plant.

When the wording of these memoranda and the niche they filled in the agreement of the parties are looked to, it becomes easily susceptible of the construction given it by the trial court; especially so, as all the appellee's testimony, including his quoted version of the statement about the $700 monthly payments so made to him by Commander Nichols, supported that view.

This court, therefore, is unable to reverse a judgment as supported by the evidence in the circumstances given.

It follows that an affirmance should be entered; it will be so ordered.

Affirmed.

PLAINTIFF'S EXHIBIT NO. 1
Contractors' Contract
NOy5739
December 29, 1942

Mr. B. F. Short
313 Knox
Houston, Texas

Dear Mr. Short:

Pending the writing of a formal equipment Rental Agreement, this will serve the purpose of recording our understanding wherein we are to rent from you the equipment about which the Officer-in-Charge of Contract Noy-5739 and you discussed on December 23, 1942.

You will rent to us for the sum of $700.-00 per month 4 vehicles now equipped to serve as busses. These are one 100-passenger Chevrolet, one 50-passenger Ford, one Dodge panel body, one Chevrolet panel body.

Included in the above rental price of $700.00 you will also furnish the necessary licenses, fire and theft insurance, and tires and tubes for these vehicles. Gasoline and necessary upkeep will be furnished by us.

In connection with the fire and theft insurance, you are to furnish us with certificates from the Insurance Company showing that this insurance is covered.

The above rental price of $700.00 is to be based on an average mileage of forty miles per car per calendar day, and additional charge will be made for all mileage above the average forty miles as follows:

Large Chevrolet Bus — 20¢ per mile
Ford Bus — 10¢ per mile
Dodge panel body — 7¢ per mile
Chevrolet Panel Body — 5¢ per mile

You are to furnish us with OPA tire and tube certificates that will permit us to buy the following tires and tubes with the understanding that the purchase price that we will have to pay will be deducted from the amount of money due you. The certificates referred to are as follows:

Dated December 26, 1942, 7—650X20 new truck tires, Unit price—$21.55, Nos. 02991W5, 02475W5, 06432W5, 07764W5, 07314W5, 06805W5 and 07381W5

Dated December 26, 1942, 7—650X20 new truck tubes, unit price—$3.86.

Dated December 15, 1942, 6—825X20 new truck tires, unit price—$52.05, Nos. 1245025, 2706425, 2014425, 1333525, 0302825, and 1227925

Dated December 15, 1942, 4—825X20 new truck tubes, unit price $7.77.

On December 28th we telephoned Mr. H. L. Weyrich who is connected with the Houston Land and Trust Company and he informed us that his Company now has a mortgage on the following equipment which you are leasing to us:

One 1941 Chevrolet long wheel base truck
One 1940 Chevrolet ¾ ton panel body
One 1940 Dodge 1-ton panel body

He told us that a note for $964.44 is due on December 24, 1942, and that another note for $982.22 is due on January 24, 1942, or a total of $1,946.60. You today told us that the fourth vehicle, namely the one 50-passenger Ford bus is clear of debt and you are the sole owner.

We will advance you the sum of $1000.00 which we will make payable jointly to you and to the Houston Land and Trust Company in order that you may have sufficient funds with which to meet the note that is due on December 24, 1942. It is our understanding from a previous conversation we had with you that you will be able to meet

the note which will fall due on January 24, 1943.

This $1000.00 advance, as well as the cost of the tires and tubes to which you have already referred, will be deducted from the rent which will be due you as accrued.

The present mileage on the cars are as follows:

One 1941 Chevrolet long wheel base truck*
One Ford Bus—70991.8 miles
One Dodge Panel Body—4333 miles
One Chevrolet Panel Body—57243.3 miles

We are to return "this equipment" to you in approximately the same condition that we received it, "making allowances for ordinary wear and tear."

Yours very truly,
Norgaard & Shaw & Vilbig Bros. Inc.
& Nathan Wohlfeld
(Signed) Nathan Wohlfeld
NW: ej
cc Houston Land & Tr. Co.
cc Lt. Comdr. Nichols
Agreed to the Above
(Signed) B. F. Short

PLAINTIFF'S EXHIBIT NO. 2
Refer to File No.
Navy Department
Officer-in-Charge of Construction
(Contracts NOy5739 and NOy5740)
Naval Air Station (L. T. A.)
Hitchcock, Texas
24 December, 1942.
Memorandum for Mr. Wohlfeld
Subject: Rental of Busses from Mr. B. F. Short

In accordance with our verbal understanding yesterday afternoon, the writer made a verbal agreement with Mr. Short on this date to rent the following equipment, for $700.00 per month. Licenses, Fire and Theft insurance and tires are to be furnished by the owner. Gasoline and necessary upkeep are to be furnished by the Government:

1—100 Passenger Chevrolet Bus
1— 50 Passenger Ford Bus
1—Dodge Panel Body Truck
1—Chevrolet Panel Body Truck

The $700.00 rental price is to be based on an average mileage of forty miles per car per calendar day, and an additional charge will be made for all mileage above the average forty as follows:

| | | |
|---|---|---|
| Large Chevrolet Bus | — 20¢ | per mile |
| Ford Bus | — 10¢ | per mile |
| Dodge Panel Body | — 7¢ | per mile |
| Chevrolet Panel Body | — 5¢ | per mile |

The rental agreement is to include a clause to the effect that $1000.00 advance payment on rental will be made Saturday, November 26th, upon delivery of the equipment. Releases for seventeen (17) tires needed for the equipment are attached. The tires are to be purchased and placed on the equipment promptly, and charged against the rental due the owner.

It is understood that you will call the American Trust Company in Houston and check the equity that Mr. Short has in the equipment, and his financial status, Saturday morning.

(Signed) Nichols
Madison Nichols.

* Mileage not noted for this car due to the speedometer being taken off for repairs.