MRS. FLORENCE A. MCCALL, ADMINISTRATRIX, V. GROGAN-COCHRAN LUMBER COMPANY.

No. A-277. Decided February 21, 1945.
Rehearing overruled April 25, 1945.
(186 S. W., 2d Series, 677.)

W. P. McComb, of Conroe, *Ben P. Monning,* of Amarillo, and *Henry D. Akin,* of Dallas, for petitioner.

It was error for the Court of Civil Appeals to hold as a matter of law that the issue of petitioner's limitation title was not raised by the evidence. Texas & N. O. Ry. Co. v. Broom, 114 S. W. 655; Bruce v. Washington, 80 Texas 368, 15 S. W. 1104; McCabe v. Moore, 38 S. W. (2d) 641.

*Pitts & Liles* and *Horace Grogan,* all of Conroe, and *Vinson, Elkins, Weems & Francis* and *John C. Townes,* all of Houston, for respondent.

Under the evidence the petitioner and those under whom he claims have never been in actual possession of the whole tract to mature a title by limitation. Holland v. Nance, 102 Texas 177, 114 S. W. 346; Bender v. Brooks, 103 Texas 329, 127 S. W. 168; Temple Lbr. Co. v. Low, 260 S. W. 637.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

Grogan-Cochran Lumber Company, the respondent here, brought a trespass to try title action against S. A. McCall and others, seeking recovery of all the A. Prather Survey in Montgomery County, Texas, except two tracts, one not here involved and the other known as the 21-acre tract. McCall, who is since deceased, disclaimed except as to a defined 84-acre tract, as to which he pleaded not guilty and set up the Ten and Twenty-five Year Statutes of Limitation. The controversies between the parties other than respondent and McCall were settled. At the conclusion of the evidence the district judge instructed the jury to find for the respondent, and entered judgment accordingly, from which Mrs. Florence A. McCall, Administratrix of the Estate of S. A. McCall, deceased, appealed. The Court of Civil Appeals held that a jury issue was raised by the evidence as to the location of the boundaries of the 21-acre tract, but that otherwise the judgment of the trial court was correct. 181 S. W. (2d) 582.

Petitioner contends that the Court of Civil Appeals erred in holding, as a matter of law, that the issue of adverse limitation title to any part of the 84-acre tract was not raised by the evidence. On the other hand, respondent contends: (a) that the title to the 21-acre tract was not involved in the suit, and its ownership was not placed in issue by any party; (b) that the only land involved in this suit is the 84-acre tract, lying partly in three tracts, which three tracts have been held under separate ownership until recently, and which 84-acre tract adjoins the 21-acre tract; (c) that the evidence shows that neither petitioner nor the Mayo heirs through whom she claims to have been in actual possession of the whole 84-acre tract so as to mature a limitation title; and (d) that if the evidence is sufficient to raise the issue of limitation as to any small tract or tracts embraced within the 84-acre tract, the possession must be held to have been only an encroachment by reason of her or their title to the adjacent 21-acre tract.

A writ of error was granted because this Court inclined to the view that the evidence put in issue the limitation claims of

McCall respecting the 84-acre tract. Upon full consideration of the briefs and arguments, we adhere to that view.

Two colored people, Charles and Sally Mayo, acquired the 21-acre tract by deed dated October 8, 1875. Subsequently Charles Mayo died, and his widow married Tom Linton. Prior to 1896 the location of the place where the negroes resided is in some doubt, but there is direct evidence that for a period of more than 20 years, beginning with 1896, Sally Mayo and Linton resided in a house located on the 84-acre tract at a point placed by the witnesses at some 30 to 100 feet from the line of the 21-acre tract. There is also evidence that from 1896, or even earlier, to 1908 these negroes cultivated some portions of a field, estimated by one witness to contain 30 to 40 acres, which extended over substantial portions of both the 21 and 84-acre tracts. One witness testified that in 1898 he cut the large timber from a tract of about 100 acres, which extended to marked lines, and that Sally Mayo claimed this timber and received pay for it. This witness also testified that in 1908 he cut timber to these marked lines again, and saw Sally Mayo receive pay for it; also that the lines to which he cut on both occasions were the same subsequently run out and marked by the surveyor who testified for petitioner. These lines bounded the 84-acre tract on the northwest, southwest, and southeast. The 21-acre tract and Mill Creek bounded it on the northeast. Another witness testified that in 1917 Linton offered to sell him the timber up to the same lines, but another purchaser bought it. This witness testified he walked over the land with Linton and the latter pointed out the boundaries of the tract, which were marked by old hacks on line trees. There was never a fence around the 84-acre tract, but there is evidence tending to establish that from 1898 or sooner to the time the lines were re-run by petitioner's surveyor in 1940, its boundaries were marked by blazes, hacks and crosses on line and corner trees. About 1908 or 1909 one of Linton's neighbors erected a fence across both the 84 and the 21-acre tracts. There is evidence that while the fence was being built at a point a substantial distance away from the 21-acre tract, Linton spoke to his neighbor about it and warned him that he was fencing some of Linton's property. The neighbor satisfied Linton that the string of fence was for pasture purposes and no claim was being made to any of the latter's land.

In 1940 McCall acquired from the Mayo heirs such title as the Mayos and Linton had respecting both the 21 and the 84-acre tracts.

■ Respondent contends that if the evidence raised the issue of limitation as to any part of the 84-acre tract, it shows that only a small part of the 84-acres was occupied in addition to the 21-acre tract, and that the encroachment doctrine applies. It is well settled that when a person enters into possession of land under a deed, his possession is referable to the deed and is presumed to be in conformity with it, and hence, for a purchaser to acquire title by adverse possession to additional land outside the limits in his conveyance, he must have actual possession of the additional land of such a character as of itself will give notice of an exclusive adverse possession, and mature into title after the statutory period. Harmon v. Overton Refining Co., 130 Texas 365, 109 S. W. (2d) 457, 110 S. W. (2d) 555, and cases cited; see also Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 114 S. W. (2d) 226, 136 S. W. (2d) 207; Turner v. Moore, 81 Texas 206, 16 S. W. 929; Kirby Lumber Co. v. Conn, 114 Texas 104, 263 S. W. 902; Houston Oil Co. of Texas v. Rice Institute, 194 S. W. 413; Federal Crude Oil Co. v. Yount-Lee Oil Co., 73 S. W. (2d) 969.

In 2 Texas Jurisprudence, page 203, sec. 110, the rule announced by the many decisions of this State relating to the encroachment doctrine is as follows:

"The encroachment doctrine applies where the claimant's inclosure did not embrace a 'substantial part' of the disputed tract, or where it extended to only a small portion or a few acres thereof. While the owner is charged with notice as to the location of his boundaries, the occupancy of the claimant in connection with and as a part of his larger holding on the adjoining tract is deemed to have been insufficient to give notice of the adverse claim. In a leading case the court observed:

" 'Whilst the true owner is chargeable with a knowledge of the boundaries of his land, he can hardly be affected with notice that a neighbor, who has encroached a few feet upon his tract, is doing so for the purpose of acquiring 640 acres of it. He would rather impute it to a mistake on the part of the apparent trespasser as to the division line between them. Whilst this might not excuse the party trespassed upon for not asserting his right to the land actually occupied by the trespasser, it would certainly save him from such consequences as the loss of a section of his land. The party encroaching would be entitled to no more than the land actually occupied by him.'

"As to whether the encroachment was sufficient to give notice of the adverse claim is to be determined, so it has been said, by

the extent thereof, and not by the character of use of which the land covered thereby has been put by the claimant. On the other hand, a recovery by the claimant is not defeated by the fact that he owned land which adjoined the disputed tract, or by the further fact that his inclosure upon the latter tract was extended from his own land, the evidence showing that the fence embraced as much of one tract as it did of the other. In some circumstances the issue as to whether the claimant's acts were notice to the owner is held to be one for the jury.

" 'No one would contend that a fence only a few feet over the line would be sufficient to give notice, while if the encroachment extended so as to include a large portion of the tract it might be considered ample. The inferences to be drawn from the facts lying between those two extremes fall within the province of the jury.' "

■ The evidence upon which petitioner relies shows that these negroes resided in a house on the 84-acre tract for over 20 years and the old field surrounding their house (depicted upon a map, defendants' Exhibit No. 13) laid principally upon the 84 acres in dispute. It follows that this is not a case where, as a matter of law, the owners of the 21-acre tract have projected their improvements over the line and occupied a small portion of the 84-acre tract in such a manner as to indicate from the nature, extent and location of it, that their possession of a portion of the larger tract was incidental or subsidiary only to their possession of the smaller body of land. Bracken v. Jones, 63 Texas 184; Federal Crude Oil Co. v. Yount Lee Oil Co., 73 S. W. (2d) 969, 979.

The rule is, as the respondent asserts, that the constructive possession is always with the true owner, and this possession cannot be ousted by a limitation claimant without an actual entry. But in this case, the petitioner's evidence tends to support the claim that as far back as 1898 Sally Mayo was selling timber up to the marked lines which defined the 84-acre tract, and that she subsequently (in 1908 and 1917) sold two more crops of timber up to these identical lines; and there is some evidence, although much less cogent, that she was claiming timber cut to these lines as late as 1934. Coupled with her long-continued and notorious claim to the timber growing on this tract, she and Linton lived upon and cultivated portions of it continuously for more than ten years. These and other circumstances fairly deducible from petitioner's proof, were sufficient fairly to apprise all persons claiming the record title to every

part of the 84-acre tract of the entry and claim of the Mayos and Linton respecting it. This entry, use, and possession were open, visible, notorious, and long-continued. It thus appears that there was substantial evidence from which the jury would have been warranted in concluding that the Mayos, Linton, and petitioner as their successor in title, had such an actual, open possession of the 84-acre tract, or part of it, as to give notice of an exclusive, adverse possession for the statutory period. Harmon v. Overton Refining Co., supra, and cases there cited.

That the 84-acre tract was not fenced does not preclude the assertion of limitation title to it. (2 Tex. Jur., 90.) If the limitation claimants' possession and use of the land to defined and marked boundaries, whether fenced or not, were sufficiently peaceable, open, notorious and adverse to give fair notice of the extent and hostility of their claim and obtained for a sufficient length of time, the requirements of the statute would be satisfied. And whether there was such a possession and use here was a question for the jury to decide.

The proofs tend to support the limitation claim of the petitioner to at least part, if not all, of the 84-acre tract. The evaluation of the evidence was for the jury, to which the issues of limitation thus arising should have been submitted.

The Court of Civil Appeals correctly decided that the evidence raised an issue of fact as to the boundaries of the 21-acre tract.

Petitioner earnestly argues that the respondent failed to establish in itself record title to the land in controversy which respondent as plaintiff in a trespass to try title action was bound to do in order to prevail. We conclude that the Court of Civil Appeals correctly disposed of petitioner's points and assignments of error attacking the sufficiency of the various conveyances in respondent's chain of title and consequently omit a detailed discussion of those assignments.

For the reasons stated, the judgment of the Court of Civil Appeals reversing the judgment of the trial court is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

Opinion delivered February 21, 1945.

Rehearing overruled April 25, 1945.