## TURNHAM v. SAWYER et al.
### No. 15045.

Court of Civil Appeals of Texas. Fort Worth.

May 13, 1949.

W. E. Hall, Jr., of San Angelo, for appellant.

C. F. Sullivant and Ray Winder, both of Gainesville, for appellees.

SPEER, Justice.

Some of the plaintiffs in this case are married women, namely, Kathryn Sawyer, Evelyn Wright and Maurine Alexander, each of whom was joined by her husband; other plaintiffs were T. J. Vaughan and C. F. Sullivant. Plaintiffs sued defendant Clinton Turnham in statutory form of

trespass to try title to recover 14.91 acres of described land in Cooke County, Texas.

Defendant plead the general issue and also title by limitations of 5, 10 and 25 years. Trial was to the court, resulting in judgment for plaintiffs, from which defendant appeals.

Two points of error are assigned. They are: (1) "The trial court erred in that his judgment is not in accordance with the preponderance of evidence introduced at the trial, which shows title in defendant by 10 year peaceable, adverse possession, cultivating, using and enjoying the same," and (2) "The trial court erred in ordering defendant to remove his buildings from the land within thirty (30) days as this was arbitrary and unreasonable."

Plaintiffs established a complete record chain of title to the land. Defendant claims by virtue of the 10-year statute of limitation. The undisputed testimony shows that as far back as 1876 J. D. Black owned a large part of the Alfred Johnson 690-acre survey and all of the Samuel Swartwart 640-acre survey; that the south line of the former survey is the north line of the latter. In after years the descendants of J. D. Black sold parts of these surveys and partitioned among themselves other parts. In so far as is necessary to state in this controversy, Emma Black, the widow of Wm. Black, who was the son of J. D. Black, and her adult children owned more than 200 acres off of the entire south side of the Johnson survey. Other heirs owned at least all of the north part of the Swartwart survey. Red River bounded both surveys on the west; apparently neither of the heirs had attached any importance to marked lines or the location of fences; there had been a fence for the past 60 years 130 varas south of the dividing line between the Johnson and the Swartwart surveys, the heirs, at one time, owning the land on both sides.

In 1925 the heirs who owned all of the south part of the Johnson survey executed a deed of trust lien on 200 acres described by metes and bounds. The first call begins at the southeast corner of the Johnson survey, which is on the north line of the Swartwart survey, and then runs north a given distance, thence west a named distance to the River, thence up the River in a south-easterly direction with its meanders to the southwest corner of the Johnson survey. This point is also the northwest corner of the Swartwart survey, whence the last line runs east with the dividing line between the two surveys a called distance to the place of beginning. A Bank at Gainesville acquired the lien thus created, foreclosed it and bought the land in at sheriff's sale on July 7, 1931, under the same description as contained in the deed of trust. Thereafter the Bank conveyed the land to Mrs. Tyler on January 18, 1940, by the same description and Mrs. Tyler conveyed to defendant Turnham all of the south part of the 200 acres on August 27, 1943, by the same definite field notes in so far as applicable to the south line.

A Mr. Henry testified that he rented 200 acres of land in November, 1930, through a Mr. Gladney, who represented the Black heirs; that he did not know who it belonged to but it was called the "J. D. Black place"; that he rented 200 acres, the south part of the Black farm; that during all the time he was on the place he paid one-third and one-fourth rentals and the pasture went with the farm; that he had some livestock and they ran in the pasture; that he paid little attention to lines but knew there was no fence on the north; that the River bounded it on the west and there was an old fence on the south which he considered the south line, that fence was between the land he had rented and land then belonging to Mrs. Long; that there was a fence on the east. That after the Bank acquired the land by foreclosure proceedings he continued to rent it, that he paid rentals to the Bank until it was sold to Mrs. Tyler and he then paid the rentals to her as he had to the Bank; that he knew nothing of the line between the Johnson and Swartwart surveys; that the south part of the place was timber and used as a pasture; that at some time while he was on the place a "trailway" or line was cut out across the south side of the land to the River but he did not know who did it; that he did not know just where the lines

were to the 200 acres he had rented, that he was not interested in the lines; that he just intended to rent the land owned by the heirs and later by the Bank and by Mrs. Tyler; that he left the place in 1943; that at some time while he was on the place Judge Sullivant, one of the plaintiffs, came out there and told him that plaintiffs owned the strip of land on the south side but since it was a small matter and only fit for pasture, it was all right for witness to go on using it for that purpose as he had in the past. Plaintiff Sullivant corroborated the witness' testimony in this respect. Mr. Sullivant also testified that he and Mr. Henry went down to the south side of the enclosure and looked at the trail or trimmed out line between the Black land and the strip in controversy and walked through it most of the way; he said this was about three months after he bought an interest in the small tract in June, 1941. This witness (a plaintiff) also testified that some weeks before defendant Turnham placed the old house on the small tract he talked with defendant and told him witness and the heirs owned the small strip and advised defendant not to put the house on it, and that after the house was moved onto it, he requested him to move it.

Mr. Murrell testified in behalf of defendant in substance that in 1934 he became the trustee for the failed bank that owned the Black land and handled the land for the bank. He said he really did not know where the dividing line was between the Johnson and Swartwart surveys; that he had been told that the old fence was the line and that he had pointed it out to prospective purchasers as the line. His testimony was apparently based upon what others had told him and it seems that the court admitted it over objections but attached little importance to it in entering the judgment.

It is quite obvious from the record that the old fence on the south which Mr. Henry had previously regarded as the south line of the 200 acres out of the Johnson survey was located by the Black heirs many years ago and is 130 varas south of the dividing line between the Johnson and Swartwart surveys. The strip of land in controversy has changed hands among the Black heirs several times by partition deeds and judgments of partition by courts. In each instance the description was by definite metes and bounds with its northwest corner being the northwest corner of the Swartwart survey, and in each instance correctly described a strip of land 130 varas wide north and south adjacent to the north boundary line of the Swartwart and the south boundary line of the Johnson surveys.

Defendant purchased a part of the 200 acres formerly owned by the Bank and by Mrs. Tyler in 1943. As already pointed out, each of said conveyances definitely described the land by metes and bounds, the south boundary line being the south line of the Johnson survey. Defendant complains because the trial court did not award to him title to the 14.91 acres (indisputably a part of the Swartwart survey). Defendant's contention is that because the small tract was included on the south by an old fence which placed it in the same enclosure with the 200-acre tract owned by the Bank and Mrs. Tyler, under whom he claims, he acquired title to the small tract under the provisions of the 10-year statute of limitation.

■ Before a person can avail himself of a claim of title by 10 years limitation, he must show that he (and those with whom he holds in privity) has had peaceable and adverse possession thereof, cultivating, using and enjoying the same during that period of time. Article 5510, R.C.S. This statute has been construed to mean that to ripen prescription of 10 years into title there must be a "claim" of ownership during that period, if not in words, then by such possession and usage as will put all persons, including the owner, upon notice that he has appropriated the land in a way hostile and to the exclusion of any title by a former owner. Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 31 L.R.A.,N.S., 153; Foster v. Persinger, Tex. Civ.App., 30 S.W.2d 378, writ refused; Felts v. Whitaker, Tex.Civ.App., 129 S.W. 2d 682, affirmed by Supreme Court 137 Tex. 578, 155 S.W.2d 604.

There is nothing in the record to indicate that either the heirs from whom Mr. Henry

rented and who gave the deed of trust lien, the Bank or Mrs. Tyler, who were defendant's immediate predecessors in title, ever at any time claimed to own that part of the Swartwart survey in controversy here. From the definite field-note description under which each held, it is certain that neither took anything south of the dividing line between the Johnson and Swartwart surveys.

■ "It is well settled that when a person enters into possession of land under a deed, his possession is referable to the deed and is presumed to be in conformity with it, and hence, for a purchaser to acquire title by adverse possession to additional land outside the limits in his conveyance, he must have actual possession of the additional land of such a character as of itself will give notice of an exclusive adverse possession, and mature into title after the statutory period." McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677, 678. Citing many previous cases sustaining the announced rule.

■ The first time any person owning the 200 acres of the Johnson survey ever demonstrated by an overt act that he was claiming the controverted small tract in the Swartwart survey was when defendant moved a house onto it from the 200-acre tract in 1944. Prior to the time he moved the house on to the disputed strip, one of the plaintiffs told him the small tract belonged to plaintiffs and advised defendant not to put the house on it. Within about three weeks after the house was moved this same plaintiff requested defendant to move it. This suit was filed in February, 1946. Viewing all the testimony in the light most favorable to the judgment, as we must in the absence of findings of fact, we conclude there was sufficient evidence of probative value to support the trial court's implied findings that defendant did not defeat plaintiffs' record title by his effort to establish title under the statute of ten years limitation.

■ We see no error presented by the second point which complains of the judgment requiring defendant to remove the house within thirty days, based upon de-

fendant's contention that such order was "arbitrary and unreasonable."

It may be assumed that defendant moved the house onto the land in good faith and in such circumstance he should have the right to remove it if the court should hold, as it did, that the land belonged to plaintiffs. There was nothing to indicate what length of time was required to move the house onto the land in the first place, nor how long it would require to remove it. Trial was had early in October, 1946. Condition of weather, the road and other impediments to such removal, as argued by defendant, do not appear in the testimony. We see no abuse of discretion by the trial court in the order named.

Under the facts impliedly found by the trial court and the cited authorities, we overrule both points of error and affirm the judgment. It is so ordered.