**Maria Vidaurri HERBST et al., Appellants,**

v.

**Enrique MARTINEZ et al., Appellees.**

No. 13214.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 13, 1957.

Rehearing Denied Dec. 11, 1957.

Gordon Gibson, J. G. Hornberger, Laredo, for appellants.

Laurie M. Huck, San Antonio, for appellees.

POPE, Justice.

In 1936, some seventy members of the Martinez family sued the members of the Vidaurri family for the partition of two tracts of land along the Rio Grande River, out of the Borrego Grant in Zapata County, Texas. In 1956, the case came to trial and the court withdrew the case from the jury and granted judgment for the plaintiffs, the Martinez heirs. Defendants, the Vidaurri heirs, admitted that they were only entitled to an undivided 1/14 interest in the twenty-eight acre tract called Tract Two, and no contest or appeal exists concerning that tract. Directly to the south of Tract Two is a fifty-eight acre tract, called Tract One, which is the only property in suit. Defendants answered the partition suit by a plea of not guilty and limitations, and a prayer that the plaintiffs take nothing. They filed no cross-action and asked no affirmative relief. Plaintiffs in a supplemental pleading claimed title by limitations and asked for affirmative relief. Plaintiffs claimed and undertook to prove title through a common source, prior possession, and by limitations. Defendants claimed that there were fact issues raised by the evidence on each of these grounds of recovery.

■ Plaintiffs, in the face of the not guilty plea of defendants had the burden to prove the common source and to connect themselves and Tract One, in dispute, with that common source upon which they relied. Morrow v. Fleming, 29 Tex.Civ.App. 547, 69 S.W. 244. Because the case was withdrawn from the jury and judgment was rendered for the plaintiffs, we must view the evidence in the light most favorable to the defendants. White v. White, 141 Tex. 328, 172 S.W.2d 295. In our opinion, there were fact issues on whether Tract One was outside the boundaries of the deed under which plaintiffs claimed, whether it also was outside of the lands owned by the grantor to plaintiffs' ancestor, and whether plaintiffs proved limitations.

Plaintiffs unquestionably connected themselves with the claimed common source with reference to some lands, but there was a fact issue on whether they connected themselves with the common source with reference to Tract One. The claimed common source is Jose Maria Vidaurri. On May 4, 1829, he conveyed to Hippolito Pena and Alejandro Vidaurri a large body of land known as the Dolores Subdivision out of the Borrego Grant. The deed described the lands conveyed to those two grantees as running from the "hill called del Difunto Flores to the Canada de San Andres which divides with a monument from those of Laredo." The hill is a well-known point on the south of the tract. The "Canada" is a disputed point on the north. Both points are somewhere on or near the Rio Grande on the west. Under this deed and an addendum to it, grantee Pena took the upper half and Vidaurri took the lower half. Plaintiff connected the defendants with the common source by inheritance through Pena. They sought to connect their own title to Pena by a deed from Pena's widow to Cosme Martinez, plaintiffs' ancestor. That deed was dated September 20, 1859, and used the same two points, the hill on the south and the Canada on the north, and conveyed to Cosme Martinez the north one-fourth of the lands between these points. The description of the land sold to Cosme Martinez was "one-fourth part of the land to be found from the hill under the name of the deceased Flores to Canada de San Andres, which divides the boundary of the land of Laredo, Mr. Martinez taking from this boundary downwards one-fourth of said land already mentioned." In other words, Cosme Martinez took the north one-fourth of the entire Dolores Subdivision, Pena supposedly still owned the one-fourth to the south, and Alejandro Vidaurri, or his successor, owned the remaining south half of the Dolores Subdivision. The Martinez plaintiffs claim that Tract One lies within the area described by the deed to Cosme Martinez, but, even if it did not, since the

grantor placed Cosme Martinez in possession, and since the grantor owned the lands south of the property described in the deed, that Martinez therefore took the lands of his grantor, where he was in fact placed in possession. Defendants Vidaurri, on the other hand, argue that they proved that Tract One was not only outside and south of the south line of the Martinez deed, but also outside of and south of all the lands owned by Pena, the grantor. Defendants, Vidaurri, say that they proved that Tract One was below the south line of all lands that Cosme Martinez and his grantor owned. We must examine the evidence.

The evidence shows that several surveyors through the years have endeavored to locate the north point of beginning, called the Canada de San Andres. A "Canada" was variously described as a canyon, or a valley, or a low area in a thicket. There were four places in the area which are known as a Canada. The true Canada or north beginning point was a much disputed fact.

Plaintiffs called E. J. Foster, County Surveyor of Webb County, who was familiar with and had done extensive surveying on the lands, as had his father before him. Foster testified that he ran the lines fixed in the field notes to a survey of the Cosme Martinez deed, as run in 1870 by a surveyor named Von Merrick. According to the Merrick Survey, the south boundary of lands described in the Cosme Martinez deed extended for more than a mile to the south of Tract One, and the deed embraced Tract One. Foster testified further that in 1887 a surveyor named Navarro located the south line of the Cosme Martinez lands at a different point, but that it too was far south of Tract One, and therefore embraced Tract One. This was the essence of plaintiffs' proof that Tract One was embraced within the Cosme Martinez deed description.

Foster, however, strongly disagreed with the surveys relied upon by plaintiffs, who

called him as a witness. On cross-examination, he pointed out that the beginning point of the Von Merrick survey depended upon the party testimony of one person, who pointed out two broken stones, and that Navarro's beginning point is unexplained from any source. He strongly discredited both the Von Merrick and Navarro surveys. He testified that he and his father before him, had done extensive surveying in the area, that the two named surveys were unfounded, and that they threw the Martinez lands about a mile too far south, since the true north beginning point, the true Canada, was far to the north of the one selected by Von Merrick and Navarro. He positively testified that Tract One in dispute was directly south of the south line of the Cosme Martinez deed, and also directly south of the south line of all the lands which Cosme Martinez' grantor, Pena's widow, owned. In other words, neither Cosme Martinez nor his grantor ever owned Tract One. Foster testified that the point, Canada de San Andres, is a well-known point, that it divides the entire Borrego Grant from Porcion 59 to the north and that it is on the banks of the Rio Grande River, which would be a natural point of beginning for the original surveyor. He stated that the point that plaintiffs chose for the Canada is more than a mile to the south of the true point and is more than a mile and a half east of the true point on the river. Defendants proved also that the plaintiffs' predecessors in title instituted and won a different suit against other parties, and that the pleadings in that former suit located the Canada at the same point of beginning that Foster says is the correct one. The result of all this is that there was evidence upon which a jury could find that Tract One is south and outside of the lines required by the deed under which plaintiffs claim. Adams v. Grogan-Cochran Lumber Co., Tex.Civ.App., 181 S.W.2d 582, affirmed, McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677, 680; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626; Leone Plantation, Inc., v. Roach, Tex.Civ.App., 187 S.W.2d 674.

Plaintiffs contend further, that even if this be true, since Cosme Martinez' grantor actually placed him in possession, which some of the evidence shows, that Cosme took the lands from the point at which the grantor started, even though it was from the wrong point of beginning. That would be a correct proposition if Pena's widow, the grantor, owned the lands on which she placed her grantee. Foster v. Duval County Ranch Co., Tex.Civ.App., 260 S.W.2d 103, 109. But if the Canada on the Rio Grande is the beginning point, as Foster contends, and if Pena's widow started at the wrong Canada, and so far south that it would throw what is now called Tract One entirely off the Pena property, the fact that she placed her grantee on her neighbor's property would not entitle the grantee to the land. Foster says that Tract One is entirely south of all property that Pena's widow, the grantor, owned. An agreement between a grantor and grantee about boundaries is ineffectual with respect to lands that neither owns. See Kyle v. Clinkscales, Tex.Civ.App., 22 S.W.2d 729.

Plaintiffs also urge that they proved title by force of prior possession. Our examination of the statement of facts convinces us that the plaintiffs' possession was referable to the deed under which they claimed. When possession is explained and disclosed to depend upon a deed, as here, the presumption of title from prior possession is rebutted. Plaintiffs assert that their possession was under, by reason of, and by force of, the deed Cosme Martinez received, and under which deed he was actually placed in possession. This is not a case for a presumption of title. Houston Oil Co. v. McCarthy, Tex.Com.App., 245 S.W. 651, 656; Noble v. Cooke, Tex.Civ.App., 253 S.W.2d 911; Frost v. Crockett, Tex.Civ.App., 109 S.W.2d 529,

536; Dean v. Grogan-Cochran Lumber Co., Tex.Civ.App., 58 S.W.2d 552; J. D. Fields & Co. v. Allison, Tex.Civ.App., 171 S.W. 274, 277; Robertson v. Kirby, 25 Tex. Civ.App., 472, 61 S.W. 967.

After Cosme Martinez purchased the land from Pena's widow in 1859, he started a settlement known as the Dolores Community. This was his ranch headquarters. The settlement was in part on land which is not in dispute and in part on Tract One. Cosme Martinez' house was actually located on Tract One, and it is still standing. Several other houses are standing, but most of the community is in · ruins. Plaintiffs proved possession of at least some parts of Tract One. They endeavor to show a fence around the whole tract, which, if they can prove, would perhaps entitle them to the whole tract by limitations. But, here, too, there was a fact issue. Defendants proved by witness Victor Pena that Juan Vidaurri, defendants' predecessor, erected fences in 1909 between Tracts One and Two. He testified that Juan Vidaurri and his sons, from 1909, lived on the tract, farmed it and raised cattle. He said that the line between the Martinez property on the north and the Vidaurri property on the south was marked, and that during the forty-seven years he had been in the area the dividing line was on the line between Tract One and Tract Two. That is the place where Foster, the surveyor, said the true line was. Defendants' witness, Roberto Vidaurri, testified that he had been through the property more than four hundred times, that he was familiar with the settlement, that the houses on Tract One are in ruins, that in 1936 there was a fence between Tract Two and Tract One, that defendants owned the fence, and that it had been there since 1916. Only one plaintiff lived on Tract One when the suit was filed, and he, Enrique Martinez, was there by permission of Roberto Vidaurri's grandmother. The other persons living on the property were employees of the defendants. The defendants had a corral on Tract One, where they kept their cattle. Witness Foster, the surveyor, testified that Juan Vidaurri was in possession of Tract One, farming it and raising cattle, from 1916 to his death. Foster was familiar with the land and he had bought an oil and gas lease from Juan Vidaurri which included Tract One.

In 1918, the heirs of Cosme Martinez partitioned 700 acres of land described as "that part of the land of Cosme Martinez which he left undivided to his seven children and their heirs at the time of his death." The partition was made on the basis of a map which extended only to the north line of Tract One, the very line Foster says is the true line, the one that witness Roberto Vidaurri said was fenced since 1916, and the line that witness Victor Pena said was recognized as the dividing line for forty-seven years of his own knowledge. The Vidaurris have paid the taxes annually on the tract. This is enough disputed evidence to raise a fact issue on ownership by limitations of the plaintiffs.

We conclude that the case, as tried, presented several issues of fact. The first issue is whether Tract One is north of the south line called for in the Cosme Martinez deed. Foster says it is not; plaintiffs claim it is. If it be south of the line, a second issue would exist on whether Tract One is located on property that was owned by Pena's widow, the grantor, when she placed Cosme Martinez physically in possession. Foster again says that it is not; plaintiffs claim it is. If Tract One is south of and outside the Pena property, then. a fact issue still exists as to the plaintiffs' limitation title. There were disputed facts concerning the condition of the fence surrounding the 58 acres, and if plaintiffs have matured limitation title, a question is present as to whether it included only the land on which there are occupied houses, or the entire 58 acres.

Since the fact issues should have been submitted to the jury, the judgment is reversed and the cause remanded.