**H. A. MARBURGER, Appellant,**

v.

**Louis ISELT, Appellee.**

**No. 12246.**

Court of Civil Appeals of Texas, Austin.

April 2, 1975.

Allan I. Schneider, Giddings, for appellant.

Michael J. Simmang, Simmang & Placke, Giddings, for appellee.

SHANNON, Justice.

Appellant, H. A. Marburger, filed a trespass to try title suit in the district court of Lee County against appellee, Louis Iselt. The land in controversy is located in Lee County. Appellant pleaded that he held record title, and alternatively, that he had obtained title by virtue of the three-year and the twenty-five-year statutes of limitations. Vernon's Tex.Rev.Civ.Stat.Ann. Arts. 5507 and 5519. Appellee claimed title under the three, five, ten, and twenty-five-year statutes of limitations. Tex.Rev. Civ.Stat.Ann. Arts. 5507, 5509, 5510, and 5519. Upon trial to the court, judgment was entered that appellant take nothing. We will affirm that judgment.

The land in dispute consisted of several blocks which were located in an old subdivision in Evergreen. The name, Evergreen, was changed to Lincoln in 1890

when the Texas and New Orleans Railroad came through Lee County. Hope for a railroad-linked prosperity never materialized in Lincoln. In 1940, Lincoln had eleven business establishments and a population of three hundred-fifty, and was largely pastoral in character. The Texas State Historical Association, II The Handbook of Texas 58 (1952).

Appellant's complaints on appeal center upon the findings in the judgment which show the basis for the judgment vesting title in appellee to be the fact of more than thirty years of open, peaceable, adverse possession by appellee or his predecessors.

Appellee's evidence was that he bought a two-acre tract of land in Lee County from Joe Fritsch in 1954 which was described in the deed by metes and bounds. Testimony from other witnesses showed that the land, as described in Fritsch's deed, most probably was the same as block twenty-one in the old subdivision. Appellee testified that Fritsch had been using the "whole thing" (the land in controversy as well as block twenty-one) since appellee had " . . . been a little boy" which was at least twenty-five years before 1953. Appellee swore that he went into possession and fenced all of the land in dispute in 1953, even though he obtained the deed from Fritsch in 1954. Appellee ran cattle on the land. After 1953, appellee "dozed" the land, planted grass, and built a stock tank and hay shed. Appellee testified that he built a good fence which would hold livestock. He denied that he leased the land from anyone. He testified that he started claiming the land as his own from the time that he fenced it, and, that to his knowledge, no one had ever questioned his ownership. Appellee claimed that he had paid county and school taxes on the land, though he stated on cross-examination that he had not brought the tax receipts to the courtroom.

Appellee called Otto Nitsche. Nitsche had assisted appellee in building the fence and in planting the grass on the land.

His testimony was that appellee had used the disputed land for grazing since about 1953. Appellee had told Nitsche that the land was his place. Nitsche testified that, in addition, he knew that the land was "his'n" [appellee's] because he had worked on it. Appellee's claim to the land, according to Nitsche, was common knowledge around Lincoln.

Appellant's evidence conflicted with that of appellee's. Appellant testified that he purchased the disputed land in 1962 from Alice Leala Kerr Price. At that time appellant said that appellee claimed possession under a lease, and that appellee wanted to continue the lease. Appellant's testimony was that, "And I went ahead and let him have it [the lease]. Well, I went ahead and asked him for the rent, and he never did—he always had some alibi that he didn't have it and this and that."

Appellant's brother, Herman Henry Marburger, testified that he had obtained a power of attorney from a "Mr. Price" who was said to have title to the disputed land. The power of attorney was dated February 21, 1957, and authorized Marburger "to rent all real estate" owned by Price in Lee County. Marburger said that under the power of attorney he orally leased the land to appellee in 1957 or 1958 for twenty dollars each year, but that appellee never paid the rent. Marburger had heard "rumors" that appellee was claiming title to the land for as many as six or seven years. Marburger corroborated appellee's evidence that appellee had fenced and cleared the property and planted grass on the land.

Appellant filed some character of lawsuit against appellee in the county court of Lee County in 1964. That suit was characterized by counsel and appellant as one "to get him [appellee] off" the disputed land. The suit made the basis for this appeal was filed in 1965.

█ When one enters into possession of land under a deed, his possession is referable to the deed and is presumed to be

in conformity with it. For the purchaser to acquire title by adverse possession to additional land outside the limits in his deed, he must have had actual possession of the additional land of such a character as of itself would have given notice of an exclusive adverse possession. McCall v. Grogan-Cochran Lumber Company, 143 Tex. 490, 186 S.W.2d 677 (1945).

■ Appellee's evidence was that he fenced all of the land in 1953, that he ran cattle thereon, and that he cleared the land and built a stock tank and hay shed. Appellee's entry, use, and possession were open, visible, notorious, and long-continued. It appears to us that there was probative evidence from which the trial court could have concluded that appellee had such an actual, open possession of the entire tract so as to give notice of an exclusive, adverse possession for the statutory period. McCall v. Grogan-Cochran Lumber Company, *supra*.

We will affirm the judgment upon the basis that appellee had perfected title by virtue of the ten-year-statute of limitation. Tex.Rev.Civ.Stat.Ann. Art. 5510.

Affirmed.